Lola J. DeWALD, Executrix and Personal Representative of the Estate of Allan F. DeWald, Deceased, Appellant (Plaintiff),

v.

The STATE of Wyoming and State Highway Commission of Wyoming and Jeff Baltimore and Steve Keigley, Appellees (Defendants),

and Harold Maddox (Defendant).

The STATE of Wyoming and State Highway Commission of Wyoming and Jeff Baltimore and Steve Keigley, Appellants (Defendants),

and Harold Maddox (Defendant),

v.

Lola J. DeWALD, Executrix and Personal Representative of the Estate of Allan F. DeWald, Deceased, Appellee (Plaintiff).

Nos. 84–269, 84–270.

Supreme Court of Wyoming.

May 23, 1986.

Rehearing Denied June 5, 1986.

John E. Stanfield (argued) John B. Scott, and Michael Sue Kern of Smith, Stanfield & Scott, Laramie, for appellant DeWald.

Robert W. Tiedeken (argued) and Richard Rideout, Amicus Curiae Committee, Wyoming Trial Lawyers Ass'n, in support of appellant DeWald.

Craig Kirkwood (argued), and Kennard F. Nelson of Kirkwood, Copenhaver & Nelson, Laramie, for appellees State of Wyo., et al.

Before THOMAS, C.J., and ROSE,[*] ROONEY,[**] BROWN and CARDINE, JJ.

CARDINE, Justice.

This is an appeal from a summary judgment granted the State of Wyoming and its employees in an action brought under the Wyoming Governmental Claims Act.

The issues we must determine in this appeal are whether patrolmen Baltimore and Keigley had a qualified immunity for their actions in operating their patrol cars at the time of this accident; whether summary judgment in favor of appellees, Officers Baltimore and Keigley and the State of Wyoming, was appropriate; and whether the officers owed a duty only to the public and not to appellant, Allan DeWald, as an individual.

We affirm.

## FACTS

On the afternoon of July 21, 1982, Officer Steve Keigley of the Wyoming Highway Patrol Department was on duty in Laramie, Wyoming. As he left town in his patrol car, he was waved down by a citizen who informed him that a man driving a large yellow car had just headed north on U.S. Highway 30 and appeared to be extremely intoxicated. In response to that report, Officer Keigley proceeded north on Highway 30 until he spotted a yellow Oldsmobile making a U-turn. He watched as the vehicle completed its turn and headed south, back toward Laramie. He turned, followed the vehicle, and saw it cross over the no-passing line twice and weave within its lane a couple of times. Based on the report and his own observations, Officer Keigley concluded that the driver had been drinking. He called in a "possible 10-55" (driving while intoxicated) and turned on his overhead lights. When the driver, Harold Maddox, did not respond, Officer Keigley touched his siren a couple of times to get his attention. Maddox still did not respond. Officer Keigley continued to follow the Maddox vehicle as it travelled south in the right-hand lane on Third Street. As the vehicles approached downtown Laramie they were intercepted by a second highway patrol car driven by Officer Jeff Baltimore. Officer Baltimore was travelling north on Third and heard Officer Keigley's radio transmission. He turned on his red lights and made a U-turn, pulling up next to the Maddox vehicle in the left-hand, south-bound lane. He signaled Maddox to pull over. Harold Maddox turned and looked at Patrolman Baltimore and then accelerated rapidly. Officers Keigley and Baltimore pursued the Maddox vehicle as it sped toward downtown Laramie. The pursuit reached speeds of approximately 55 m.p.h. and covered several blocks before the officers backed off. It ended when the Maddox vehicle collided with a vehicle stopped at a red light at the intersection of Third and Clark streets. Neither of the officers' vehicles were involved in the collision. The driver of the stopped vehicle, Allan DeWald, was killed instantly.

Lola J. DeWald, wife of the decedent, brought suit against Harold Maddox, the State of Wyoming, the State Highway Commission, and the two highway patrolmen. She settled her wrongful death claim against Maddox, and he was dismissed from the case. She pursued her action against the remaining defendants under the Wyoming Governmental Claims Act

---

[*] Retired November 1, 1985.

[**] Retired November 30, 1985.

charging them with negligence "in one or more of the following respects:

"(a) The manner in which the said Harold Maddox was chased or pursued by Defendant Patrolman Baltimore and/or Defendant Patrolman Keigley in view of the circumstances then existing and the risk of harm or damage to persons using the streets within the City of Laramie including Decedent DeWald; and

"(b) The failure of Defendant Patrolman Baltimore and/or Defendant Patrolman Keigley to take such action as was reasonable and prudent in order to avoid the risk of harm to the public and Decedent DeWald under the circumstances in this matter; and

"(c) The negligent or improper training and/or supervision of Defendant Patrolman Baltimore and/or Defendant Patrolman Keigley; and

"(d) The failure to establish and/or enforce safe and proper and appropriate procedures for the apprehension of violators of the law (actual or suspected); and

"(e) The failure to establish and/or enforce safe and proper and appropriate procedures for the apprehension of violators of the law (actual or suspected) who are evading or appear to be attempting to evade arrest or capture within an urban area or under circumstances where the danger or existence of other traffic and conditions is known or should be known; and

"(f) The failure to establish and/or enforce reasonable and safe and proper and appropriate procedures for the arrest or apprehension of a person known or suspected to have committed a traffic offense; and

"(g) The failure to establish and/or enforce reasonable or safe or proper or appropriate procedures or regulations which would govern or control the actions of Defendant Patrolman Baltimore and/or Defendant Patrolman Keigley under the circumstances in this matter."

Claiming immunity from suit, the State of Wyoming, State Highway Commission, and Officers Baltimore and Keigley moved for summary judgment. In granting the motion, the court found that Officers Baltimore and Keigley acted in good faith and reasonably under the circumstances and that they, therefore, as a matter of law, had a qualified immunity from liability for the death of Allan F. DeWald. The court concluded further that, as a matter of law, the State of Wyoming and State Highway Commission were immune from liability for the actions of Officers Baltimore and Keigley. Finally, the court found that there was no dispute as to any genuine issue of material fact which would alter or change the conclusion of immunity and, therefore, defendants were entitled to judgment as a matter of law.

## STATUTORY IMMUNITY

The Wyoming Governmental Claims Act was adopted in 1979. The act retained governmental immunity as provided in § 1–39–104(a), W.S.1977, Cum.Supp.1985, unless legislation provided an exception to immunity. Thus, in *Hurst v. State*, Wyo., 698 P.2d 1130, 1132 (1985), we said:

"The Wyoming Governmental Claims Act reaffirmed and retained immunity from claims in tort against governmental entities and their employees. Unless that immunity was expressly waived, immunity was to be the rule; liability was to be the exception and then only when expressly provided for within the Wyoming Governmental Claims Act." (Footnote omitted.)

The statutory exceptions to immunity relevant here are:

"A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any motor vehicle, aircraft or watercraft." Section 1–39–105, W.S.1977, Cum.Supp.1985.

"A governmental entity is liable for damages resulting from tortious conduct of law enforcement officers while acting

within the scope of their duties." Section 1–39–112, W.S.1977, Cum.Supp.1985.

## COMMON LAW IMMUNITY

■ The quoted statutes provide an express waiver of immunity as to both public employees operating motor vehicles and police officers. In this case, therefore, the officers were not immune unless there was a common law immunity preserved by § 1–39–102(a), W.S.1977, Cum.Supp.1985, which provides in part:

"This act is intended to retain any common law defenses which a defendant may have by virtue of decisions from this or other jurisdictions."

It is not entirely clear whether the legislature intended, by this section of the Governmental Claims Act, to retain common law immunities as well as common law defenses. One could argue that the term "common law defenses" meant defenses such as contributory negligence which, when compared with other negligence, might bar recovery but would not include immunity. In *Kimbley v. City of Green River*, Wyo., 663 P.2d 871, 883 (1983), however, we gave the term "common law defenses" a broad interpretation. The Governmental Claims Act, including § 1–39–102(a), was in effect when we decided that case, and we freely discussed and applied a qualified immunity for police officers. Therefore, we implicitly held in *Kimbley v. City of Green River*, supra, that a common law qualified immunity survived the passage of the Governmental Claims Act. If there is a legitimate common law qualified immunity applicable to the operation of a motor vehicle, then that immunity might bar recovery by appellant.

The trial court, upon the depositions, exhibits and extensive record before it, first found that Officers Baltimore and Keigley, in pursuing Maddox, acted reasonably and in good faith. The court then held that they should have summary judgment as a matter of law based upon a common law qualified immunity available for reasonable acts of police officers done in good faith. The source of the common law qualified immunity articulated by the district court was *Kimbley v. City of Green River*, supra, 663 P.2d at 878, wherein we stated:

"We * * * have dealt with *the civil liability of law enforcement officers for tortious conduct. * * * They have a qualified immunity, as distinguished from an absolute immunity* as in the case of prosecuting attorneys. We set out as a general rule in *Blake v. Rupe*, Wyo., 651 P.2d 1096, 1109 (1982), citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974):

" ' "[A] qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct." ' " (Footnote omitted.)

The rule we pronounced in *Blake v. Rupe*, Wyo., 651 P.2d 1096 (1982), was based upon *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Thus, we stated:

"The rule of *Scheuer* is more simply stated to be that a public official enjoys a qualified immunity if he in good faith entertains a reasonable belief that his actions are lawful, notwithstanding a subsequent judicial determination that they are not; courts will not unfairly use hindsight in assessing official actions challenged in litigation. *Apton v. Wilson*, supra, [165 D.C.App. 22,] 506 F.2d 83 [1974]." 651 P.2d at 1109.

*Scheuer v. Rhodes*, supra, was precedent for the rule in *Blake v. Rupe*, supra, which was followed by *Kimbley v. City of Green River*, supra. *Scheuer v. Rhodes* involved a suit against the governor and other officials of the State of Ohio because of execu-

tive orders issued to deal with civil disorder at Kent State University. The question presented was that of the immunity of an executive required to make important decisions in the business of governing. *Blake v. Rupe,* supra, involved the immunity accorded a prosecutor who initiates criminal charges and an investigator involved in the investigation of the incident which was a basis for the charges. We stated that:

"[A] public official enjoys a qualified immunity if he in good faith entertains a reasonable belief that his actions are lawful, notwithstanding a subsequent judicial determination that they are not * *." 651 P.2d at 1109.

We then noted that although the rule had arisen in cases brought under the Federal Civil Rights Act, 42 U.S.C. § 1983, " * * * we adopt it as equally applicable to the allegedly tortious conduct of public officers against whom damages are sought." *Id.* at 1109. In adopting the above rule, we relied upon *Apton v. Wilson,* 506 F.2d 83 (D.C.Cir.1974); *Atkins v. Lanning,* 556 F.2d 485 (10th Cir.1977); *Ross v. Meagan,* 638 F.2d 646 (3rd Cir.1981); and *Forsyth v. Kleindienst,* 599 F.2d 1203 (3rd Cir.1979). *Apton* involved a damage suit against public officials because of arrest, detention, fingerprinting and prosecution of certain individuals; *Atkins* concerned an action against a district attorney for wrongful arrest and imprisonment; *Ross* involved civil rights actions against public officials for violation of constitutional rights to hearings; and *Forsyth* involved actions against two attorneys general for warrantless electronic surveilances. Not a single case cited in *Blake v. Rupe,* supra, applied the rule of qualified immunity to driving an automobile.

■ We observed in *Blake v. Rupe,* supra, 651 P.2d at 1109, that our immunity rule was consistent with § 895D Restatement, Torts 2d. But the Restatement concerns an administrative act or omission, a so-called discretionary function. Surely we are not prepared to say that operation of an automobile is an administrative act or omission or an executive policy decision. Neither our holding in *Blake v. Rupe,* su-

pra, nor the cases we cited therein will support such a result. And our decision in *Kimbley v. City of Green River,* supra, does not establish a qualified immunity for the act of driving a patrol car. Despite some overly broad language in *Kimbley,* our limited holding was that an officer has a qualified immunity from tort liability when he makes an arrest under a facially valid warrant. *Kimbley v. City of Green River,* supra, 663 P.2d at 878–883.

A pertinent discussion of qualified immunity for public officials is found in *Mason v. Bitton,* 85 Wash.2d 321, 534 P.2d 1360 (1975). Following enactment of legislation abolishing governmental immunity, the Washington Supreme Court provided an exclusion from tort liability under which "government could still govern," stating, "[t]he exclusion from tort liability was strictly limited to those acts involving basic policy discretion" at the executive level. Id. 534 P.2d at 1364. In *Mason* an officer pursued a speeder who was involved in an accident. As in the instant case, the victim of the accident sued the officer for damages. With respect to immunity, the court stated:

"We are fully convinced that the initial decision to give or not to give chase, and the decision as to whether to continue the pursuit are properly characterized as operational, and not the 'basic policy decision' discussed in *King* [*v. Seattle,* 84 Wash.2d 239,] 525 P.2d 228 [246 (1974)]. To now hold that this type of discretion, exercised by police officers in the field, cannot result in liability under RCW 46.-61.035, due to an exception provided for basic policy discretion, would require this Court to close its eyes to the clear intent and purpose of the legislature when it abolished sovereign immunity under RCW 4.96.010. If this type of conduct were immune from liability, the exception would surely engulf the rule, if not totally destroy it. Therefore, we conclude the exception for basic policy discretion does not apply to the facts of this case." 534 P.2d at 1365.

In summary, the trial court was incorrect when it held that the officers and their employer, the State of Wyoming, were protected from liability by a common law immunity. Police officers are not immune from liability if they negligently perform an operational duty such as driving a patrol car. A qualified immunity is available only with respect to executive policy functions. Without an immunity under either the common law or the Governmental Claims Act, the officers and the State were entitled to summary judgment only if it was proper under negligence principles.

## LIABILITY OF POLICE OFFICERS UNDER NEGLIGENCE PRINCIPLES

The liability of a police officer for pursuing a law violator who becomes involved in an accident causing damage to a third person has not before been considered by this court. A review of the decided cases exhibits a considerable reluctance to find the officers liable where they are not involved in the accident.

The policy reasons stated are that the officer has a duty to apprehend, arrest and remove from the highways drunk drivers; that if, in the performance of his job as a patrolman, he must choose whether to pursue or allow a lawbreaker to escape, he should not be liable for either choice in the absence of gross or wanton conduct almost amounting to bad faith; that he should be responsible only for the careful operation of his own car; and that he should not be liable for the unpredictable actions of the driver being pursued for that would make him an insurer of the wrongful acts of a lawbreaker. All of the above seem to essentially say that, except in extreme or outrageous circumstances, an officer's pursuit of a vehicle which is involved in an accident not involving the officer's vehicle is not the proximate cause of that accident.

Thus, in *Roll v. Timberman*, 94 N.J.Super. 530, 229 A.2d 281 (1967), a police officer was charged with negligence in pursuing the vehicle of a lawbreaker at high speeds. The court stated:

"[T]he majority view expressed in other jurisdictions in similar cases holds that the police officer is not liable.

"The reasoning which underlies the rejection of liability in these cases is two-fold: (1) it is the duty of a police officer to apprehend those whose reckless driving makes use of the highway dangerous to others; (2) the proximate cause of the accident is the reckless driving of the pursued, notwithstanding recognition of the fact that the police pursuit contributed to the pursued's reckless driving." (Citations omitted.) Id. 229 A.2d at 284.

In *Chambers v. Ideal Pure Milk Company*, Ky.Ct.App., 245 S.W.2d 589 (1952), the police pursued a vehicle at speeds of 70 to 75 m.p.h. At an intersection, the pursued vehicle was involved in a collision with plaintiff's vehicle. The court stated:

"To argue that the officers' pursuit caused Scheare to speed may be factually true, but it does not follow that the officers are liable at law for the results of Scheare's negligent speed. Police cannot be made insurers of the conduct of the culprits they chase." 245 S.W.2d at 591.

In *Reenders v. City of Ontario*, 68 Cal. App.3d 1045, 137 Cal.Rptr. 736 (1977), the court affirmed a summary judgment in favor of the city holding that plaintiff's injury was not proximately caused by the police officers' pursuit of a vehicle. It concluded that policy matters such as preventing future harm by apprehending a lawbreaker operating a vehicle in a dangerous and reckless manner outweighed other considerations.

In *State of West Virginia ex rel. Poulos v. Fidelity and Casualty Company of New York*, 263 F.Supp. 88 (S.D.W.Va.1967), the court granted summary judgment in favor of the police officer who pursued the vehicle driven by an escapee upon the grounds that the officer's pursuit was not the proximate cause of plaintiff's injury. The court stated:

"It is hardly necessary to point out the eoverriding public policy of apprehending criminals as rapidly as possible, thus

eliminating continued criminal acts, as a factor outweighing the undesirable consequences of holding an officer liable for damages sustained by a third party as a result of negligence such as described in the complaint.

"We are not prepared to hold an officer liable for damages inflicted by the driver of a stolen vehicle whom he was lawfully attempting to apprehend for the fortuitous reason only that the criminal drove through an urban area. To do so would open the door for every desperado to seek sanctuary in the congested confines of our municipalities * * *." *Id.* at 91.

*City of Miami v. Horne,* Fla., 198 So.2d 10 (1967), was an action for wrongful death resulting from a collision between plaintiff's vehicle and a driver being pursued by a police officer. The trial court granted summary judgment holding that the officer's negligence, if any, was not the proximate cause of the damages. The Florida Supreme Court stated:

"The rule governing the conduct of police in pursuit of an escaping offender is that he must operate his car with due care and, in doing so, he is not responsible for the acts of the offender. Although pursuit may contribute to the reckless driving of the pursued, the officer is not obliged to allow him to escape." *Id.* at 13.

The court further stated:

"[T]he standard of care exercised by him must be judged liberally and that the city * * * should not be liable in damages for every mistake of judgment by its officers * * *." *Id.* at 13.

In *Thornton v. Shore,* 233 Kan. 737, 666 P.2d 655 (1983), a police officer pursued a speeding vehicle which ran stop signs and was driven recklessly until it was involved in a collision with plaintiff. The officer's vehicle was not involved in the collision. The court stated:

"We conclude the 'due care' requirement of K.S.A. 8–1506(d) applies only to the police officer's physical operation of his own vehicle and not to the decision to chase or continue to chase a law violator.

If the officer is in compliance with the statute in the operation of his own vehicle, he is entitled to the privileges and immunities afforded by the statute and is not vicariously liable or responsible for the reckless or negligent acts of the law violator he is pursuing." 666 P.2d at 668.

The statute referred to is almost identical to a similar statute in effect in the State of Wyoming; and, in effect, the Kansas court is really saying that the officer's manner of driving his patrol car was not a proximate cause of the accident. Summary judgment was affirmed in favor of the officer.

In *Rubinow v. County of San Bernardino,* 169 Cal.App.2d 67, 336 P.2d 968 (1959), suit was brought against the county because of the failure of an officer to arrest a motorist driving his vehicle erratically who was involved in an accident with a third vehicle causing the death of that driver. The officer was following the vehicle which struck plaintiff. Plaintiff contended the officer was negligent in failing to apprehend and arrest that driver and that his negligence was the proximate cause of the accident and death of the decedent. The court stated:

"It appears to us that in a case of the type here at hand there is at least some degree of discretion required to be exercised by the officer, and where that is true [the duty must be] clear and unequivocal." 336 P.2d at 970.

Dismissal was affirmed.

We agree with these courts and hold that when a police officer pursues a fleeing violator and the violator injures a third party as a result of the chase, the officer's pursuit is not the proximate cause of those injuries unless the circumstances indicate extreme or outrageous conduct by the officer. To put it another way, the possibility that the violator will injure a third party is too remote to create liability until the conduct of the officer becomes extreme.

## SUMMARY JUDGMENT IN THIS CASE

We have often said that if the trial court's judgment is sustainable on any the-

ory, it will not be disturbed on appeal. *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925, 935 (1981). With this in mind, we affirm the district court's entry of summary judgment.

This court has stated that:

"The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law." *Reno Livestock Corporation v. Sun Oil Company (Delaware),* Wyo., 638 P.2d 147, 150 (1981).

 Summary judgment will not often be proper in a negligence case. *Keller v. Anderson,* Wyo., 554 P.2d 1253 (1976). The question of negligence will be taken from the jury in only the most exceptional cases. 65A C.J.S. Negligence § 252. However, where the record fails to establish an issue of material fact, the entry of summary judgment is proper, even in a negligence case. *Keller v. Anderson, supra.*

Viewing the record before us in the light most favorable to the appellant, as we are required to do, *Reno Livestock Corporation v. Sun Oil Company (Delaware),* supra, we conclude that appellees were entitled to judgment as a matter of law.

Appellant contends that the record establishes questions of fact sufficient to defeat summary judgment. Specifically, appellant asserts that the reasonableness of the officers' decision to pursue the Maddox vehicle once it became apparent that he intended to outrun them is a question for the jury. We cannot agree. Officer Keigley began his pursuit in response to a citizen report of a drunk driver. Police officers are expected to respond to such reports by observing, pursuing, and, where reasonable cause exists, stopping the suspect. Based upon the citizen report and his own observations, Officer Keigley had reason to believe that Harold Maddox was drunk and, therefore, had a duty to attempt to stop him. In doing so, Officers Keigley and Baltimore were met with unusual resistance and were forced to make a choice—to pursue Maddox

and attempt to stop him forthwith or to drop back and allow him to proceed through downtown Laramie. Clearly, either choice posed a risk to the citizens of Laramie.

Faced with circumstances requiring a quick decision without time for reflection, the officers chose to pursue Harold Maddox and attempt to stop him before he reached the more congested downtown area. It was broad daylight, the weather conditions were clear, Third Street was a straight, level, wide four-lane street and was paved and dry. The intersection of Third and Clark streets was clearly marked by traffic lights. Officers Keigley and Baltimore's speed at one point reached approximately 55 m.p.h.; they ceased the pursuit sometime before the collision; and they were not involved in the collision. Their conduct was not extreme or outrageous. To find that there would have been no collision if they had stopped sooner is conjecture. They had no control over Harold Maddox. There is no explanation for Maddox colliding with the DeWald vehicle under the circumstances present here.

 In order to recover, appellant must show that the officers' actions were the proximate cause of the accident. *Apperson v. Kay,* Wyo., 546 P.2d 995 (1976). Proximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence. *McClellan v. Tottenhoff,* Wyo., 666 P.2d 408 (1983). The law does not charge a person with all the consequences of a wrongful act, but ignores remote causes and looks only to the proximate cause. *Caterpillar Tractor Company v. Donahue,* Wyo., 674 P.2d 1276 (1983).

 Where the causal connection between defendant's acts and plaintiff's damage is almost entirely subject to conjecture and speculation, summary judgment may be proper. *Hoyle v. Southern Bell Telephone and Telegraph Company,* 474 F.Supp. 1350 (W.D.N.C.1979). In *Hoyle* the plaintiff claimed that the defendant negligently failed to repair a customer's

telephone and as a result the customer was delayed in getting to the hospital and died. The court granted defendant's motion for summary judgment finding that the case hinged on many facts which could never be determined. The court based its judgment primarily upon the fact that it was impossible to show that, absent the delay, the deceased would have lived.

■■■ The principle stated in *Hoyle* and our pronouncements in this case clearly show that the officers' actions were not a proximate cause of this accident. No matter what course of action they chose to take, the accident still might have happened. To say that Maddox would have slowed down or stopped had the officers dropped the pursuit is sheer speculation. What might have happened had they dropped back and allowed Maddox to proceed into downtown Laramie is totally unclear. He might have hit the DeWald vehicle anyway. Or he might have run over a child or a pedestrian. The possibilities are endless. Furthermore, had the officers allowed Maddox to continue to drive in a drunken condition, as appellant suggests should have been allowed, and had someone been injured, they in all probability would have been subject to suit for failing to stop him. The officers' actions were not extreme or outrageous as a matter of law and were, therefore, too remote to be the proximate cause of the accident.

■■■ We have said that negligence must be determined based upon the facts as they appeared at the time—not by a judgment from actual consequences which were not then to be apprehended by a prudent and competent man. *Endresen v. Allen*, Wyo., 574 P.2d 1219 (1978). We will not unfairly use hindsight in assessing official actions challenged in litigation. *Blake v. Rupe*, supra, 651 P.2d 1096. The record indicates that Officers Keigley and Baltimore acted pursuant to a duty arising from their employment requiring that they attempt to apprehend and stop drunk drivers. There is necessarily some risk in that undertaking, and we will not subject them to liability on the theory that some other possible action "might" have led to a less tragic result. Negligence and proximate cause are never presumed from the happening of an accident, and mere conjecture cannot form the basis of liability. *Apperson v. Kay*, supra, 546 P.2d 995.

The Wyoming Governmental Claims Act, under which this suit was brought, was intended to mitigate the harsh results of the strict application of governmental immunity. It was enacted so that governmental entities and employees, like everyone else, could be held liable for their negligent acts. Had the officers negligently operated their vehicles and become involved in an accident which would have resulted in liability in ordinary circumstances, we would have no hesitancy about the case. But, where the officers are performing a duty required of them by law and the course of action they must choose is about evenly balanced, more is required than speculation as to the result from choosing either course.

■■■ Having held the patrolmen not liable, we must also hold that the appellee, State of Wyoming, cannot be held liable, the reason being that if the conduct of the patrolmen did not amount to negligence that caused the accident, then neither could their training by the State nor could rules have been a cause of the accident. Stated another way, it would have had to appear that, because of inadequate training or failure to follow departmental rules, the officers acted in a negligent manner and caused this accident. We have held that did not occur.

## THE PUBLIC–DUTY RULE

■■■ The State of Wyoming and Officers Baltimore and Keigley have appealed the court's finding that in the absence of qualified immunity, a duty was owed DeWald. They contend that the duty owed by the officers is a public duty only—that, therefore, no duty was owed to DeWald individually and the officers cannot be liable for his death. The source of the "public duty only" rule seems to be Cooley on

Torts § 300 at 389 (4th ed. 1932) wherein, referring to policemen's duty, it is stated:

"His duty is to serve criminal warrants, to arrest persons who commit offenses in his view, to bring nightwalkers to account, and to perform various offices of similar nature. Within his beat he should watch the premises of individuals, and protect them against burglaries and arsons. But suppose he goes to sleep on his beat, and while thus off duty a robbery is committed or a house burned down, either of which might have been prevented had he been vigilant,—who shall bring him to account for this neglect of duty? Not the individual who has suffered from the crime, certainly, for the officer was not his policeman; was not hired by him, paid by him, or controlled by him; and consequently owed to him no legal duty." (Footnote omitted)

The public-duty/special-duty rule was in essence a form of sovereign immunity and viable when sovereign immunity was the rule. The legislature has abolished sovereign immunity in this area. The public duty only rule, if it ever was recognized in Wyoming, is no longer viable.

In *Schear v. Board of County Commissioners of Bernalillo County,* 101 N.M. 671, 687 P.2d 728, 731 (1984), the court stated:

"[T]he development in the law has been to abolish it in those jurisdictions where the matter has been more recently considered. See *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982) (overruling *Massengill* ); *Adams v. State; Martinez v. City of Lakewood* [655 P.2d 1388 (Colo.App.1982) ]; *Commercial Carrier Corp. v. Indian River County* [371 So.2d 1010 (Fla.1979) ] (declaring *Modlin v. City of Miami Beach,* 201 So.2d 70 (Fla.1967) to have no effect following legislative waiver of governmental immunity); *Wilson v. Nepstad,* 282 N.W.2d 664 (Iowa 1979); *Brennen v. City of Eugene,* 285 Or. 401, 591 P.2d 719 (1979); *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976).

'[T]he trend in this area is toward liability. The "public duty" doctrine has lost support in four of the eight jurisdictions relied upon by the city [for its argument that it owed no duty of ordinary care to an individual citizen].' *Wilson v. Nepstad,* 282 N.W.2d at 667. Those courts have demonstrated a reasoned reluctance to apply a doctrine that results in a duty to none where there is a duty to all. See *Adams v. State* [Alaska, 555 P.2d 235 (1976) ] * * *."

We are in agreement with these statements. The duty owed in the circumstances of this case has been clearly stated by us and need not be restated now.

## THE SPECIALLY CONCURRING OPINION

The specially concurring opinion suggests that the holding in this case is at odds with the basis for the district court's decision. The district court found a qualified immunity. The basis of that finding was that the officers had acted reasonably and in good faith. The specially concurring opinion suggests that we should adopt a rule that there is a qualified immunity for "actions by law enforcement officers which are determined to be reasonable and accomplished in good faith." If reasonable means the exercise of due care, then perhaps the district court found the officers not negligent either because they acted with due care or because their actions were not the proximate cause of the accident. If reasonable means the actions of the officers were lawful according to § 31–5–106, W.S.1977, that would also involve a finding that they acted with due care. Such a finding, in either case, would be in conformance with our holding in this case.

The specially concurring opinion finally questions whether we considered the exception to immunity found in § 1–39–112, W.S. 1977, Cum.Supp.1985. That statute was expressly considered in the majority opinion.

To hold as the specially concurring opinion suggests would be to readopt governmental immunity for law enforcement offi-

cers contrary to the express enactment by the legislature of the Governmental Claims Act.

For all the reasons stated, the judgment of the district court is affirmed.

THOMAS, C.J., filed a specially concurring opinion.

ROSE, J., filed a dissenting opinion.

THOMAS, Chief Justice, specially concurring.

I am in full accord that the summary judgment entered by the district court in this case must be affirmed. I am, however, troubled by the justification for that result found in the majority opinion which does not account for the difference in Wyoming law from law in the jurisdictions from which persuasive authorities are drawn. It seems to me that the majority opinion also fails to address the dual bases for potential liability upon which the plaintiff relied in the district court and with respect to which the district court granted the summary judgment.

I also am troubled by an apparent vacillation in the majority opinion with respect to the statutory posture in Wyoming. In the latter portion of the opinion dealing with the public-duty rule, the majority indicates an abolition of sovereign immunity in the specific context. Earlier, however, the majority opinion at least acknowledges that in Wyoming the legislature adopted a statutory scheme which preserves sovereign immunity save for specific exceptions. I note that this does differentiate the situation in Wyoming from the statutory posture in all the jurisdictions from which authorities are cited save for New Mexico.

My specific concern with respect to the majority opinion is that the cases from other jurisdictions upon which the majority opinion relies appear to me to deal with the potential liability arising from the exception created in § 1–39–105, W.S.1977 (Cum. Supp.1984), in which an exception to sovereign immunity is created for negligence in the operation of motor vehicles. I am not certain that the majority opinion really ad-dresses the exception from sovereign immunity found in § 1–39–112, W.S.1977 (Cum.Supp.1984), relating to tortious conduct of law enforcement officers while acting within the scope of their duties, upon which the plaintiff relied in this action.

In its judgment in this case the district court articulated the proposition that it would conclude as a matter of law that except for the qualified immunity available to these law enforcement officers it would have held that the law enforcement officers in the State of Wyoming and the State Highway Commission owed specific duties to the decedent. It is clear to me that in those comments, the district court signaled that it would not have granted a summary judgment in this case but would have permitted the case to be tried to a jury except for the qualified immunity available to the law enforcement officers. That qualified immunity flows from *Kimbley v. City of Green River,* Wyo., 663 P.2d 871 (1983) and *Blake v. Rupe,* Wyo., 651 P.2d 1096 (1982), cert. denied, 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983). It follows that the district court would not have concluded that there was no proximate cause relating the conduct of the law enforcement officers to the death of plaintiff's decedent, at least as a matter of law. I understand the majority opinion to take issue with this position of the district court, but I think the disposition made in the majority opinion logically is limited to that exception to sovereign immunity found in § 1–39–105, W.S. 1977 (Cum.Supp.1984). On this issue I might well prefer the approach by the district court, because issues of proximate cause ordinarily are determined by a jury as issues of fact. *McClellan v. Tottenhoff,* Wyo., 666 P.2d 408 (1983). That in fact was the posture of several of the cases upon which the majority premises the disposition of this appeal.

I would affirm the district court on the premise of qualified immunity available to the law enforcement officers. In my judgment the qualified immunity available to law enforcement officers properly was found to be present in this instance by the

district court. The qualified immunity which is identified in *Kimbley v. City of Green River*, supra, attaches to the officers individually and is separate and apart from any sovereign or governmental immunity. Simply put, those actions by law enforcement officers which are determined to be reasonable and accomplished in good faith are not tortious. This ground for disposing of the plaintiff's claim reaches not only the claimed exception in § 1–39–105, W.S.1977 (Cum.Supp.1984), but also the exception found in § 1–39–112, W.S. 1977 (Cum.Supp.1984). Effectuating the concept of immunity for those actions determined to be reasonable and accomplished in good faith disposes of all bases of claimed liability against the defendants in this case. If the conduct of the law enforcement officers is not tortious under the common-law doctrine of qualified immunity, then of course no vicarious liability exists on the part of the State of Wyoming.

ROSE Justice, dissenting.

I would take issue with the majority opinion as well as the specially concurring opinion of Chief Justice Thomas for these following reasons:

Initially, under § 1–39–104(a), W.S.1977, 1985 Cum.Supp., the Governmental Claims Act grants law enforcement officers absolute immunity, along with other public employees. Thereafter, under § 1–39–112, W.S.1977, 1985 Cum.Supp., the immunity for law enforcement officers is removed. By reason of this withdrawal of immunity, law enforcement officers and their governmental-entity employers become subject to suit for an officer's tortious behavior while acting within the scope of employment. However, even though the immunity of police officers is removed by § 1–39–112, the Governmental Claims Act, § 1–39–107(a), W.S.1977, 1985 Cum.Supp., provides for the retention of all common-law defenses. One of those defenses, which is available to law enforcement officers at common law and under our prior opinion, *Kimbley v. City of Green River*, Wyo., 663 P.2d 871 (1983), is that of qualified immunity. This immunity

defense depends upon whether the officer acted reasonably and in good faith at the time and place in question. If the officer was so acting, then, at common law and under our relevant decisions, he is held to be immune. If he was not acting reasonably and in good faith, then he could be held liable for negligence.

The trial court in this case held that the officers were acting reasonably and in good faith—as a matter of law (and the Chief Justice agrees)—thereby making them eligible for protection by reason of their common-law immunity, thus justifying the summary judgment. This is where I part company with the trial court and the Chief Justice. I think that the good faith and the reasonableness of the officers' behavior under the facts of this case were questions for the jury. This conclusion not only causes me to disagree with the district court and the Chief Justice, but also places me in a dissenting position with respect to the majority opinion.