**Teresa BROWN, Appellant (Plaintiff),**

**v.**

**Officer AVERY; and City of Laramie, Wyoming, Appellees (Defendants).**

**No. 91–249.**

Supreme Court of Wyoming.

April 9, 1993.

Mary T. Kloeckner, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Dennis Coll, Sr. Asst. Atty. Gen., for appellee Avery.

C.M. Aron, Aron & Hennig, Laramie, for appellee City of Laramie.

Before MACY, C.J., THOMAS, CARDINE and GOLDEN, JJ., and URBIGKIT, J., Retired.

THOMAS, Justice.

The issues in this case evolve from the failure of a police officer to arrest a driver whom the officer had stopped for a traffic violation and whom the officer realized had consumed alcoholic beverages. The significant legal question relates to whether there was a causal relationship, qualifying under the concept of proximate cause, between the failure to arrest and a roll over of the vehicle driven by the individual who was not arrested. The case was decided by a summary judgment and presents the usual threshold question of whether a genuine issue of material fact is found in the record. Collateral issues are raised with respect to whether the trial court abused its discretion in refusing to grant a continuance to permit the deposition of a non-moving party, and whether the trial court committed a second abuse of discretion in failing to grant a motion for a change of judge. Our review of the record persuades us there is no genuine issue of material fact, and the trial court correctly concluded that the police officer and his employer, the City of Laramie, were entitled to judgment as a matter of law. In addition, we hold the trial court did not abuse its discretion in refusing to grant the continuance sought or in refusing to grant the motion for a change of judge. The summary judgment entered by the trial court is affirmed.

The appellant, Teresa Brown (Brown), sets forth the issues for review in her brief in this way:

I. Whether summary judgment was improper because:

a. there was non-existent and/or insufficient factual basis;

b. genuine question of material fact existed; or,

c. the court below did not properly apply the law.

II. Whether the court below abused its discretion in denying the non-moving party's request for an extension of time to obtain the deposition of moving party.

III. Whether the court below properly denied Appellant's motion for a change of judge.

In his Brief of Appellee, the police officer states the issues in this way:

I. Summary judgment was properly entered by the lower court as there was no genuine issue of any material fact.

II. The lower court granted the non-moving parties ample time to respond to the motion for summary judgment.

III. There was no reason whatsoever for the court below to change judges.

The City of Laramie, in its separate brief as an appellee, sets forth the issues in this way:

1. Was there a genuine issue of material fact so as to preclude summary judgment?

2. Is summary judgment proper concerning the issue of proximate cause in the circumstances of this case; specifically,

a. Is a police officer's failure to arrest a driver a remote cause or a proximate cause of the driver's accident more than one hour later?

b. After a police stop, is the drinking of beer and vodka by a driver an efficient intervening cause of an automobile accident?

3. If a police officer observes signs of drinking by a driver, does the officer have a duty to perform sobriety tests or blood alcohol tests when he does not have probable cause to do so?

4. Was the appellant denied reasonable time for discovery?

5. Was the appellant entitled to a change of judge?

On the night of August 31–September 1, 1987, Timothy Mendoza (Mendoza) had been at a party where he drank beer and either gin or vodka. Mendoza left the party accompanied by Brown, Brown's sister, and another man. They went to a liquor store where they purchased a twelve-pack of beer and a bottle of either vodka or gin.

They drove around Laramie, and Mendoza continued to drink from the bottle of liquor.

The police officer, then employed by the City of Laramie in its police department, was on duty during the early morning hours of September 1, 1987. While on routine patrol, in Laramie, at 1:53 A.M., the officer watched a red 1973 Plymouth Duster ease slowly into the intersection at Ninth Street and Reynolds Street against a red light. The vehicle encroached approximately one-fourth to one-half its length into the intersection. The police officer stopped that vehicle at the intersection of Ninth Street and West Hill. The driver, Mendoza, got out of his vehicle at the same time the police officer got out of his car. When he was five to six feet from Mendoza, the officer explained why he had stopped Mendoza and asked to see his driver's license. Mendoza told the officer the driver's license was in the jockey box, and he then walked around the vehicle to the passenger's side and retrieved his wallet. He turned around, walked to within two or three feet of the officer, and produced his driver's license.

With Mendoza within three feet, the officer could smell alcohol on his breath. He studied Mendoza carefully, paying close attention to his balance, eyes, and speech. The officer observed Mendoza's speech was not slurred or strained, his eyes were not glassy or bloodshot, and his balance was not impaired. The police officer did not check the status of Mendoza's driver's license, and he did not subject Mendoza to any field sobriety test. He did check for outstanding warrants against Mendoza and, learning there were none, he released him without issuing a citation. Brown testified she heard the officer tell Mendoza to "take the car home and park it now" when he released him.

Following the stop by the police officer, Mendoza and his passengers went to a convenience store where they purchased potato chips. Between the time he was stopped by the officer and the time of the accident, Mendoza drank an unknown quantity of the vodka or gin. At 3:00 A.M., Mendoza was traveling west on Interstate 80, just east of Laramie, when he lost control of the vehicle and drove onto the median. The vehicle was airborne for some forty feet before landing and rolling over twice. Brown was injured in the accident, and Mendoza and Brown's sister were killed. The third passenger suffered minor injuries.

Brown filed a complaint against Mendoza's estate, Mendoza's father, the police officer, and the City of Laramie. Her complaint against the police officer and the City of Laramie alleged the failure of the officer to administer a sobriety test when he stopped Mendoza and asserted this constituted negligence that had proximately caused Brown's injuries. Brown's contention is that, had the officer tested Mendoza, he would have realized Mendoza was intoxicated; he would have arrested Mendoza for driving while under the influence of intoxicating beverages; and, thus, the accident would not have occurred. The district court dismissed Brown's claim against Mendoza's estate because the estate did not exist, and the court ordered Brown's attorney to pay attorney fees incurred in the defense of the action on behalf of Mendoza's estate. Later, the district court granted a summary judgment to Mendoza's father to which Brown agreed by stipulation. A little over one month later, the district court, ruling there was no genuine issue of material fact and holding that, as a matter of law, the officer's failure to administer a sobriety test to Mendoza did not proximately cause Brown's injuries, entered a summary judgment in favor of the police officer and the City of Laramie. Brown appeals from that summary judgment.

 In reviewing the propriety of a summary judgment, we examine the facts in the light most favorable to the party opposing the motion. *Keehn v. Town of Torrington*, 834 P.2d 112 (Wyo.1992); *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704 (Wyo.1987). Even in cases arising out of alleged negligent conduct, a summary judgment is appropriate when no genuine issue of materi-

al fact exists, and the moving party is entitled to judgment as a matter of law. *Allmaras v. Mudge*, 820 P.2d 533 (Wyo. 1991); *DeWald v. State*, 719 P.2d 643 (Wyo.1986). An issue of material fact exists when a disputed fact, if proven, would establish or refute an essential element of the cause of action or defense asserted by the parties. *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59 (Wyo.1989); *Johnson v. Soulis*, 542 P.2d 867 (Wyo.1975).

In its facts, as disclosed by the record, this case resembles *Keehn*. In *Keehn*, we analyzed the conduct of the police officers under traditional negligence principles, and we held a police officer's duty in assessing a person's fitness to drive a vehicle is to act as a reasonable police officer under the existing circumstances.

The record discloses the officer detected alcohol on Mendoza's breath, but after observing Mendoza closely, he exercised his judgment and concluded Mendoza was not impaired. As we noted in *Keehn*, a person can legally drink and drive in Wyoming, and the odor of alcohol on a driver's breath by itself is not a ground for arrest of that driver. *Keehn*. Furthermore, we do not perceive it is within our judicial prerogatives to require that a police officer administer a field sobriety test in every instance in which he stops a vehicle and detects the odor of alcohol on the driver's breath.

In *Keehn*, we noted "[p]eace officers are encouraged, if not constitutionally obliged, to employ 'the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'" *Keehn*, 834 P.2d at 116 (citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality)). We went on to comment:

> As to the factual realities, governments simply do not have the resources to protect all citizens at all times from the consequences of all illegal or tortious activity. Consequently, law enforcement agencies and personnel must be afforded some discretion as to how to marshal

their time, talents, and assets to achieve the greatest overall good.

*Keehn*, 834 P.2d at 116.

The trial judge concluded that, on the basis of this record, even if one assumed negligence on the part of the police officer, his conduct was not the proximate cause of this accident. The court was aware of the time elapsed between the contact by the officer and the accident, and also noted the continued consumption by Mendoza of alcoholic beverages. We agree the record is insufficient, as a matter of law, to justify a finding of a causal relationship between the police officer's contact and his decision not to arrest Mendoza and the accident.

In Brown's second claim of error, she asserts the trial court erroneously denied her request for an extension of time to depose the police officer. Brown filed her action on August 15, 1990, and an amended complaint was presented on November 7, 1990. On June 13, 1991, ten months after Brown filed her original complaint and seven months after the amended complaint, the officer submitted his motion for summary judgment which was supported by his affidavit. On July 1, 1991, Brown requested an extension of time to depose the officer to "pierce the allegations" of his affidavit. On August 13, 1991, the trial court granted Brown an extension of time in which to file her own affidavit, but it denied her request for an extension of time to depose the police officer. On August 21, 1991, the district court entered its order setting a hearing on motions for summary judgment for September 6, 1991, at which time those motions were heard. On October 17, 1991, the district court issued its decision letter announcing it would grant the motions for summary judgment, and the order granting the summary judgment was entered on October 31, 1991.

We have held that, under the plain language of Wyo.R.Civ. P. 56, the entry of summary judgment is permissible only after there has been adequate time for discovery. *Pace v. Hadley*, 742 P.2d 1283 (Wyo.1987). Wyo.R.Civ. P. 56(f) grants to the district court discretion to order a continuance to permit further discovery prior

to its ruling on any motion for summary judgment. The court can permit the taking of depositions, if the court finds that such an order is just. The rule provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Wyo.R.Civ. P. 56(f).

Brown relies on *Pace* in submitting her argument that there was an abuse of the district court's discretion in denying the continuance. We conclude there was no such abuse of discretion.

On its facts, *Pace* is distinguishable from this case. The non-moving party in *Pace* had only about sixty days from the time the complaint was filed to respond to the moving parties' motion for summary judgment. We there held the entry of summary judgment violated the mandate of Wyo.R.Civ. P. 56 to provide time for adequate discovery before the judgment was entered. By contrast, Brown had at least ten months in which she could have developed her case through discovery, including taking the deposition of the police officer. In view of the length of time involved, we are unable to say that the district court here abused its discretion by denying Brown's request for additional time to depose the officer.

■ Brown also contends that the district court erred in denying her motion for a change of judge under Wyo.R.Civ. P. 40.1(b)(2). Brown argues that the following series of actions of the district court judge demonstrated a pre-determined hostility toward Brown or her attorney:

a. The court improperly held a hearing on and granted defendant Cipriano Mendoza's motion for a protective order when Brown's counsel had only six hours notice of the hearing and was unable to participate in person or by phone.

b. The court grounded its decision to grant the protective order in part on the fact that Brown's counsel had not complied with the court's order to pay attorney fees entered five months earlier.

c. The district court judge was unmindful of Canon 3 of the Wyoming Code of Judicial Conduct when it considered the motion for the protective order without the presence of Brown's counsel.

In short, Brown asserts that the trial court was biased either against her or her attorney.

■ Our definition of bias is that it connotes a leaning of the mind or an inclination toward one person over another. *TZ Land & Cattle Co. v. Condict*, 795 P.2d 1204 (Wyo.1990); *Cline v. Sawyer*, 600 P.2d 725 (Wyo.1979), *appeal after remand*, 618 P.2d 144 (1980). In order to constitute a ground for disqualification, the bias of the trial judge must be personal.

[I]t must be such a condition of the mind which sways judgment and renders the judge unable to exercise his functions impartially in a given case or which is inconsistent with a state of mind fully open to the conviction which evidence might produce. *Cline*, 600 P.2d at 729.

Here Brown has not appealed the decision of the trial court to enter the protective order nor has she argued the substance of any purported violation of the Wyoming Code of Judicial Conduct. We uniformly hold we will not address issues on appeal that are unsupported by cogent authority or argument.[1] For that reason, we do not review the actions by the district court at the time it ruled on the protective order.

This leaves only the question of whether the mere entry of the protective order by the trial court constitutes bias against Brown as we have defined it. To demonstrate judicial bias, the party must show more than the fact the trial court ruled against a party, correctly or incorrectly, on a particular motion, objection, or any other

**1.** *Matter of Adoption of BBC,* 831 P.2d 197 (Wyo. 1992); *State Farm v. Wyoming Ins. Dep't.,* 793 P.2d 1008 (Wyo.1990); *Burg v. Ruby Drilling Co., Inc.,* 783 P.2d 144 (Wyo.1989); *Clouser v. Spaniol Ford, Inc.,* 522 P.2d 1360 (Wyo.1974).

matter. If the mere showing of an unfavorable ruling sufficed to establish bias, disputes seldom would be resolved by a single judge. Brown has failed to show anything more than this, and this claim of error must be rejected.

The order granting summary judgment entered by the district court is affirmed.

THOMAS, Justice, concurring specially.

I perceive an additional reason that the summary judgment in this case should be affirmed. As the majority opinion notes:

The issues in this case evolve from the failure of a police officer to arrest a driver whom the officer had stopped for a traffic violation and whom the officer realized had consumed alcoholic beverages. Op. at ——.

I believe there is a significant legal question relating to the application of the doctrine of qualified immunity to the facts in this case. I am satisfied the doctrine of qualified immunity should be invoked to shield the officer and his employer from liability as a matter of law, in the absence of bad faith or outrageous conduct.

In Keehn, we did not address any rule of law relating to immunity. I would now extend the concepts articulated in Keehn, and hold a police officer's decision with respect to an arrest of a driver, who has consumed alcoholic beverages, and the officer's assessment of the person's ability to operate a vehicle safely are discretionary functions. When a police officer performs such discretionary functions reasonably and in good faith, the rule of qualified immunity shields him from liability.

In Kimbley v. City of Green River, 663 P.2d 871 (Wyo.1983), we invoked the concept of qualified immunity in connection with activities of police officers. In that case, qualified immunity was extended to officers who reasonably and in good faith made an arrest under a facially valid warrant. Relying upon Blake v. Rupe, 651 P.2d 1096 (Wyo.1982), cert. denied, 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983), we articulated this general rule:

[A] qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

Kimbley, 663 P.2d at 878 (citing Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Our definition of good faith is that it encompasses an honest, lawful intent, and actions taken without knowledge of fraud and without any intent to assist in any fraudulent or otherwise unlawful scheme. Kimbley. We have defined what is reasonable as that "having the faculty of reason; rational; governed by reason; being under the influence of reason; thinking, speaking, or acting rationally, or according to the dictates of reason; agreeable to reason; just; rational." Kimbley, 663 P.2d at 879 (citing Claussen v. State, 21 Wyo. 505, 516, 133 P. 1055, 1056 (1913)). We do not unfairly invoke hindsight in assessing official actions challenged in litigation, and the conduct of an officer must be outrageous to justify loss of the qualified immunity otherwise bestowed. Kimbley.

We considered the concept of qualified immunity in DeWald v. State, 719 P.2d 643 (Wyo.1986), and we there declined to extend it to the conduct of police officers who negligently perform operational duties such as driving a patrol car. Our holding was that qualified immunity is available only with respect to discretionary or policy-making functions and does not extend to those activities identified as operational duties. DeWald. The categorization of the situation in DeWald as involving operational duties serves to distinguish that case from this case.

We have not yet considered the question of whether a determination by a police officer of a person's fitness to drive and his

decision with respect to the arrest of a person who is driving after consuming intoxicating beverages are discretionary or operational functions. Other courts, where this issue has been considered, have ruled these activities are discretionary functions. *Hildenbrand v. Cox*, 369 N.W.2d 411 (Iowa 1985); *Shore v. Town of Stonington*, 187 Conn. 147, 444 A.2d 1379 (Conn.1982); *Everton v. Willard*, 468 So.2d 936 (Fla.1985); *Rubinow v. County of San Bernardino*, 169 Cal.App.2d 67, 336 P.2d 968 (1959).

In *Hildenbrand*, the Supreme Court of Iowa recognized that, in investigating accidents and determining the manner in which they will enforce the laws, police officers necessarily exercise broad discretion. That was not the only ground upon which the court based its decision, however; it also analyzed the arrest and driving while under the influence of intoxicating beverages statutes adopted in Iowa and found the use of the term "may" in the statute rather than "shall" conferred discretion on the officers with respect to a decision as to whether an arrest should be made. *Hildenbrand*. Invoking similar reasoning, the Supreme Court of California, in *Rubinow*, denied the relief sought citing the failure of the plaintiff to demonstrate that the state statute created a mandatory duty the officer was obliged to perform.

My review of the applicable Wyoming statutes persuades me a police officer's evaluation of the fitness of a person to operate a motor vehicle and his decision as to whether an arrest should be made are discretionary activities. Like the Iowa statutes, the Wyoming statutes invoke the term "may" rather than the word "shall" in describing the officer's duty to arrest, both in general and in relation to motor vehicle violations.[1] "Generally, the verb 'may' when used in a statute makes that statute directory instead of mandatory." *In Interest of MKM*, 792 P.2d 1369, 1373 (Wyo.1990) (citing *Mayor v. Bd. of Land Comm'rs*, 64 Wyo. 409, 192 P.2d 403, *reh'g denied*, 64 Wyo. 430, 195 P.2d 752 (Wyo. 1948)). I find it significant that the legislature, when referring to typically ministerial duties of police officers, has invoked and used the mandatory term "shall."[2]

After reviewing the facts of this case in the light of our rule of qualified immunity and our usual standard of review, I conclude the district court's grant of the summary judgment also is sustainable under the doctrine of qualified immunity. Brown failed to allege any facts sufficient to over-

---

1. Wyo.Stat. § 7–2–102 (1987) reads:

 (a) A peace officer may arrest a person when:
 (i) He has a warrant commanding that the person be arrested; or
 (ii) He has reasonable grounds for believing that a warrant for the person's arrest has been issued in this state or in another jurisdiction. (Emphasis added.)
Wyo.Stat. § 7–2–103 (1987) reads, in part:
 (a) A peace officer may arrest a person without a warrant and detain that person until a legal warrant can be obtained when:
 (i) Any criminal offense is being committed in his presence by the person to be arrested;
 (ii) He has probable cause to believe that a felony has been committed and that the person to be arrested has committed it; or
 (iii) He has probable cause to believe that a misdemeanor has been committed, that the person to be arrested has committed it and that the person, unless immediately arrested:
 (A) Will not be apprehended;
 (B) May cause injury to himself or others or damage to property; or
 (C) May destroy or conceal evidence of the commission of the misdemeanor.
 (b) A peace officer may issue a citation to a person in lieu of arrest for a misdemeanor if:

 (i) The misdemeanor is committed by the person in the officer's presence; or
 (ii) The peace officer has probable cause to believe a misdemeanor has been committed and that the person to be issued a citation has committed the misdemeanor. (Emphasis added.)
Wyo.Stat. § 31–5–1204 (1989) reads, in part:
 (a) The authority of a police officer to make an arrest is the same as upon an arrest for a felony when the officer has reasonable and probable grounds to believe that the person arrested has committed any of the following offenses and the manner of making arrests shall be as in misdemeanor cases:
 \* \* \* \* \* \*
 (ii) Driving or being in actual physical control of a vehicle while under the influence of alcohol or any substance as prohibited by W.S. 31–5–233; \* \* \*.

2. *See, e.g.,* Wyo.Stat. § 31–5–1211 (1989) which reads, in part:
 (a) Every traffic enforcement officer \* \* \* shall deposit the original or a copy of the traffic citation with a court having jurisdiction over the alleged offense or with its traffic violations bureau. (Emphasis added.)

come the qualified immunity extended to the police officer. There is nothing in the record to demonstrate the officer behaved unreasonably, without good faith or in an outrageous manner.

The record discloses the officer detected alcohol on Mendoza's breath, but after observing Mendoza closely, he exercised his judgment and concluded that Mendoza was not impaired. As we noted in *Keehn*, a person can legally drink and drive in Wyoming, and the odor of alcohol on a driver's breath by itself is not a ground for arrest of that driver. *Keehn.* Furthermore, I do not perceive it is within our judicial prerogatives to require that a police officer administer a field sobriety test in every instance in which he stops a vehicle and detects the odor of alcohol on the driver's breath.

Brown alleged nothing more to establish bad faith than the claimed existence of a relationship of friendship between the police officer and Mendoza's family. Brown contends the officer knew Mendoza and his family and asserts this is evidence of his bad faith in failing to carry out his duties by arresting Mendoza. Without more, this assertion is insufficient to serve as a basis for a charge of bad faith. I find nothing else in the facts of this case, even read in the light most favorable to Brown, that would serve to take away the qualified immunity of the officer.

The Supreme Court of Connecticut has described quite aptly the policy reasons for limiting the exposure of a police officer to liability:

The adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society. Should the officer try to avoid liability by removing from the road all persons who pose any potential hazard, he may find himself liable in many instances for false arrest. We do not think that the public interest is served by allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary

professional duty. Such discretion is no discretion at all.

*Shore*, 444 A.2d at 1384.

In *Keehn*, we expressed similar concerns. We noted "[p]eace officers are encouraged, if not constitutionally obliged, to employ 'the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'" *Keehn*, 834 P.2d at 116 (citing *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983) (plurality)). We went on to comment:

As to the factual realities, governments simply do not have the resources to protect all citizens at all times from the consequences of all illegal or tortious activity. Consequently, law enforcement agencies and personnel must be afforded some discretion as to how to marshal their time, talents, and assets to achieve the greatest overall good.

*Keehn*, 834 P.2d at 116.

This language captures a recognition that the proper planning and implementation of a viable system of law enforcement for any governmental entity must involve the exercise of discretionary powers at several levels, including those exercised by judges, prosecutors, arresting officers, and other officials in the justice system. *Everton*, 468 So.2d 936. It is indeed appropriate to strike a balance between detrimental interference with the provision of this essential public service and the natural desire to compensate victims of officials' wrongdoing. Cynthia Zellner MacKinnon, Note, *Negligence of Municipal Employees: Redefining the Scope of Police Liability*, 35 U.Fla.L.Rev. 720 (Fall 1983) (recognizing the qualified immunity from liability extended to a police officer in performing discretionary functions achieves this balance). The officer may not perform those discretionary functions in an outrageous manner or in bad faith but, when he invokes his professional judgment and acts on it in good faith, he will not be subjected to liability.

I do not disagree with, nor in any way denigrate, the decisional basis of the trial court. The trial judge concluded that, on

the basis of this record, even if one assumed negligence on the part of the police officer, his conduct was not the proximate cause of this accident. The court was aware of the time elapsed between the contact by the officer and the accident, and also noted the continued consumption by Mendoza of alcoholic beverages. I agree the record is insufficient, as a matter of law, to justify a finding of a causal relationship between the police officer's contact followed by his decision not to arrest Mendoza and the accident. I would adopt the qualified immunity doctrine, however, because it is broader than the rule of causal connection encompassed in the trial court's decision. In *Keehn,* for example, there was no evidence of a continued consumption of alcoholic beverages, and the absence of a causal connection in that case had to depend only upon the lapse of time. It follows there will be instances in which a trial will be required with respect to causation, in which the trial would not be necessary if the doctrine of qualified immunity were invoked. I prefer a legal rule to address such situations rather than the potential of ad hoc resolutions of a causal connection, which, after all, ordinarily is a question of fact. *McClellan v. Tottenhoff,* 666 P.2d 408 (Wyo.1983).