**Judith Ann DARRAR and Dickson Darrar, Husband and Wife, Petitioners,**

v.

**Michael BOURKE; Michael Wyatt; and the City of Sheridan, a Municipal Corporation, Respondents.**

**The CITY OF SHERIDAN, Petitioner,**

v.

**Judith Ann DARRAR and Dickson Darrar, Husband and Wife, Respondents.**

Nos. 95–92, 95–98.

Supreme Court of Wyoming.

Jan. 29, 1996.

Michael K. Shoumaker of Northern Wyoming Law Associates, Sheridan, for Judith Ann Darrar and Dickson Darrar.

John R. Perry of Goddard, Perry & Vogel, Buffalo, for Michael Bourke and Michael Wyatt.

Debra J. Wendtland of Connor & Wendtland; and Robert W. Connor, Jr., City Attorney, Sheridan, for City of Sheridan.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

Judith Ann Darrar (Darrar) and her husband,[1] Dickson Darrar, appeal the district court's decision to dismiss their negligence claims, filed pursuant to the Wyoming Governmental Claims Act, against Michael Bourke and Michael Wyatt (officers). The district court determined the officers were entitled to qualified immunity and dismissed the claims against the officers. The City of Sheridan (Sheridan) appeals the district court's refusal to dismiss Darrar's claims against it. The two appeals were consolidated for purposes of briefing and oral argument.

We affirm the district court's refusal to dismiss the claims against Sheridan and reverse the order to dismiss the claims against the officers.

## ISSUES

Darrar presents the following issues:

1. Is the claim of Judith Darrar and Dickson Darrar against police officers Michael Bourke and Michael Wyatt barred by qualified immunity?

2. If the police officers are given qualified immunity, must the claim of the plaintiffs against the City of Sheridan also be dismissed?

The officers present a single issue for review:

Did the trial court properly rule that Officers Bourke and Wyatt were protected by qualified immunity?

Finally, the City of Sheridan presents these issues:

I: Are Defendants Bourke and Wyatt entitled to qualified immunity?

II: Does the City have a duty of indemnity once the officers have been declared immune?

---

1. Dickson Darrar joins in his wife's complaint with claims for the lost care, comfort, advice and society of Mrs. Darrar as well as loss of consortium and loss of their cab company. For sim- plicity, we will refer to the Darrars' claims as the claims of Mrs. Darrar. However, this in no way detracts from the fact that both Darrars are parties to this action.

III: What is the effect of W.S. § 1–39–104?

## FACTS

On April 8, 1992, the officers, while employed as police officers for the City of Sheridan, encountered Danny Welch in Sheridan, Wyoming. Welch had been drinking alcoholic beverages and appeared to be emotionally upset and disturbed when the officers questioned him. Welch asked the officers for a ride and a place to stay because he had just been released from prison and did not have a place to stay in Sheridan.

One of the officers transported Welch to the police station, allowing Welch to call a friend for a ride and a place to stay. When Welch was unable to contact his friend, one of the officers directed a police dispatcher to call a taxicab for Welch. The dispatcher requested cab service at the police station to take an unnamed individual (Welch) out past the Skyline Drive–In. Within a short time Darrar arrived at the police station in her taxicab in response to the request.

The officers did not advise Darrar that Welch was a convicted felon, recently released from prison, that he had been drinking and exhibiting signs of emotional distress, or that they had been unable to confirm the identity or location of the person to whose home Welch stated he wished to go. Darrar picked Welch up at the police station, Welch's requested destination never materialized and Welch subsequently kidnapped and raped Darrar.

Darrar filed a tort action against the officers and Sheridan, based on the waiver of immunity for tortious acts of peace officers found in Wyo.Stat. § 1–39–112 (1988) of the Wyoming Governmental Claims Act. Darrar claimed the officers were police officers for the City of Sheridan and were acting within the scope of their duties as police officers when they committed the negligent acts which resulted in Darrar's kidnapping and rape. Specifically, Darrar claimed:

20. That Officers Wyatt and Bourke were aware of the fact that Danny Welch was dangerous to Judith Darrar and that he was a threat to her well being because:

1. Each officer knew that Danny Welch had exhibited a propensity for violence in the past;

2. The officers knew Danny Welch had been drinking;

3. The officers knew Danny Welch was emotionally disturbed that night;

4. The officers should have been suspicious and concerned about sending a female cab driver to a supposed address that could not be located, had no listed telephone and whose very existence they failed to confirm.

21. That on April 8, 1992, the Defendants had a custodial relationship with Mr. Welch as a result of investigating him, placing him in the police car and transporting him to the Sheridan Police Station.

22. That at the time of these events there existed a special relationship between Judith Darrar and the Defendants since they summoned the cab to the police station placing her at risk.

23. That the Defendants were negligent in failing to arrest Danny Welch for drinking alcohol while on parole from prison and a minor.

24. That the Defendants were negligent in failing to check and confirm the supposed destination of Danny Welch.

25. That the Defendants were negligent in failing to warn Mrs. Darrar that the person they summoned her to carry had a history of violence, had been drinking and was disturbed emotionally.

26. The negligence of the Defendants set in motion the special forces which allowed Danny Welch to commit his crimes and offenses against the Plaintiffs [Darrars].

The officers responded to Darrar's amended complaint with a motion to dismiss based on qualified immunity. Sheridan answered Darrar's complaint, denying, among other things, that the officers were acting within the scope of their duties[2] and asserting gov-

---

2. Sheridan's answer presents a dilemma with the district court's decision to grant the officers' motion to dismiss at this stage in the proceedings.

Sheridan's answer inserts an issue which could divest the officers of qualified immunity. If, during the proceedings against Sheridan, the court

ernmental immunity and qualified immunity. Sheridan also claimed Darrar failed to state a cause of action upon which relief could be granted and that Darrar was more negligent than Sheridan. After briefing and a hearing on the officers' motion, the district court dismissed Darrar's tort claims against the officers based on qualified immunity. Sheridan filed a motion to dismiss, arguing that if the officers were not liable, then Sheridan also escapes liability. The district court refused to dismiss Darrar's claim against Sheridan based on the waiver of immunity in the Wyoming Governmental Claims Act. Darrar and Sheridan appeal from those decisions.

## STANDARD OF REVIEW

Stating the officers were entitled to qualified immunity and were immune from suit, the district court granted the officers' motion to dismiss. In *Cranston v. Weston County Weed & Pest Board*, we reiterated our oft-cited standard of review of a trial court's order dismissing a complaint:

> According to our standard of review we will sustain a dismissal of a complaint only if it shows on its face that the plaintiff was not entitled to relief under any set of facts. In considering such a motion, the "facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to plaintiffs." Dismissal is a drastic remedy, and is sparingly granted.

*Cranston v. Weston County Weed & Pest Bd.*, 826 P.2d 251, 254–55 (Wyo.1992) (quoting *Matter of Paternity of JRW*, 814 P.2d 1256, 1259 (Wyo.1991) (citations omitted)).

WYO.R.CIV.P. 8 provides that a generalized statement of facts is sufficient in a complaint. A plaintiff should have the opportunity to litigate a claim on its merits. *Torrey v. Twiford*, 713 P.2d 1160, 1165–66 (Wyo.1986). WYO.R.CIV.P. 9(b) provides that malice, intent, or knowledge of a person may be averred generally, only fraud and mistake must be stated with particularity. *Torrey*, 713 P.2d at 1166. Therefore, we must determine whether it appears beyond doubt that no set of facts in support of Darrar's claim

would entitle her to relief. *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

Another reason that a litigant should usually have the opportunity to develop his claim beyond the complaint is that of judicial economy and expense to the parties if the appeals court reverses the dismissal. " * * * [A] motion to dismiss [is not] the only effective procedural implement for the expeditious handling of legal controversies. Pretrial conference; the discovery procedures; and motions for a more definite statement, judgment on the pleadings and summary judgment, all provide useful tools for the sifting of allegations and the determination of the legal sufficiency of an asserted claim. The salvaged minutes that may accrue from circumventing these procedures can turn to wasted hours if the appellate court feels constrained to reverse the dismissal of the action. * * * This is not to say or imply that a motion to dismiss should never be granted. It is obvious that there are cases which justify and indeed compel the granting of such motion. The line between the totally unmeritorious claims and the others cannot be drawn by scientific instruments but must be carved out case by case by the sound judgment of trial judges. That judgment should be exercised cautiously on such a motion." *Rennie & Laughlin, Inc. v. Chrysler Corporation*, 242 F.2d 208, 213 (9th Cir.1957). *Torrey*, 713 P.2d at 1166–67.

## DISCUSSION

■ Historically, a peace officer was entitled to qualified immunity if, while acting within the scope of his duties, he performed his discretionary duties reasonably and in good faith. *Blake v. Rupe*, 651 P.2d 1096, 1107 (Wyo.1982), *cert. denied*, 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983). "[C]ommon law has never granted police officers an absolute immunity." *Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)). When considering whether a peace officer is entitled to

finds the officers were not acting within the scope of their duties, Sheridan will not be liable pursuant to WYO.STAT. § 1–39–104(b) (1988) of the

Governmental Claims Act. Then, because the court already dismissed the officers, Darrar may have a claim without a defendant.

qualified immunity, the district court must determine: 1) the officer was acting within the scope of his or her duties; 2) the officer was acting in good faith; 3) the officer's acts were reasonable under the circumstances; and 4) the officer's acts were discretionary duties and not merely operational or ministerial duties. *See Oyler v. State*, 618 P.2d 1042, 1053 (Wyo.1980); *Blake*, 651 P.2d at 1110; *Brown v. Avery*, 850 P.2d 612, 617 (Wyo.1993) (Thomas, J., specially concurring) (quoting *Kimbley v. City of Green River*, 663 P.2d 871, 878 (Wyo.1983)).

 The terms "good faith," "reasonable," "ministerial" and "discretionary" were discussed by this court in the context of qualified immunity[3] in *Blake, Oyler,* and *DeWald v. State*, 719 P.2d 643 (Wyo.1986). The definitions in these cases instruct us in the case at bar. In *Blake* we defined "good faith" as:

being honest, lawful intent, and the condition of acting without knowledge of fraud and without interest to assist in fraudulent or otherwise unlawful scheme, together with the definition set out in *Cone v. Ivinson*, 4 Wyo. 203, 33 P. 31 (1893):

" * * * 'Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even though the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious.' "

*Blake*, 651 P.2d at 1110 (citing *Wendling v. Cundall*, 568 P.2d 888, 890 (Wyo.1977)).

We also noted in *Blake:*

While the term "reasonable" hardly needs defining, this court has undertaken to do so in *Claussen v. State*, 21 Wyo. 505, 516, 133 P. 1055, 1056 (1913), wherein it was explained from Webster "as having the faculty of reason; rational; governed by reason; being under the influence of reason; thinking, speaking, or acting ra-

tionally, or according to the dictates of reason; agreeable to reason; just; rational."

*Blake*, 651 P.2d at 1110.

In *Oyler* we stated a public official's duty is ministerial when:

". . . it is absolute, certain, and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion. More specifically, where the law imposes on the officer the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest, the officer is liable to such individual for any injury which he may proximately sustain in consequence of the failure to perform the duty at all, or to perform it properly." (Footnote references omitted.) 67 C.J.S. Officers § 208, subsection c, "Ministerial Powers and Duties, p. 686.

*Oyler*, 618 P.2d at 1048–49.

Later, in *DeWald*, we held that "qualified immunity is available only with respect to executive policy functions." *DeWald*, 719 P.2d at 649. These are the so-called "discretionary functions." *Id.* at 648.

██ Considering the requirements for qualified immunity and their definitions, cases involving the defense of qualified immunity should rarely be disposed of by a Rule 12(b)(6) dismissal. *Patton v. Black*, 646 So.2d 8, 10 (Ala.1994); 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.07 at 12–69, n. 22 (2d ed.1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Such cases are often reversed and remanded for factual development because the record is inadequate to determine whether the public official is entitled to qualified immunity. *See e.g., Oyler*, 618 P.2d at 1053; *Cooney v. White*, 845 P.2d 353, 369 (Wyo.

---

**3.** Darrar's complaint alleged the officers were acting within the scope of their duties. Although Sheridan's answer denied this allegation, we must accept the allegations of the complaint as true when reviewing the grant of a WYO.R.CIV.P. 12(b)(6) dismissal. Therefore, we do not discuss the meaning of "within the scope of his or her

duties" here. However, we do note that this is an important, preliminary issue which must be addressed when determining whether the officers are entitled to qualified immunity and when determining whether the governmental entity must defend and indemnify the officers pursuant to WYO.STAT. § 1–39–104 (1988).

1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993); *T.M. v. Noblitt,* 650 So.2d 1340, 1346 (Miss.1995); *Roe v. Hamilton County Dept. of Human Services,* 53 Ohio App.3d 120, 560 N.E.2d 238, 243 (1988). Unlike absolute immunity, a determination that qualified immunity is generally available to peace officers is not sufficient to sustain a motion to dismiss. The defense of qualified immunity presents mixed questions of fact and law. These questions are better suited for resolution at the summary judgment stage of the proceedings after the facts are sufficiently developed. *Noblitt,* 650 So.2d at 1346.

■ On the record before us,[4] we cannot conclude the district court properly determined the officers were entitled to qualified immunity based on the facts alleged in Darrar's complaint. The district court's preliminary determination that qualified immunity is available to peace officers under the Wyoming Governmental Claims Act is not sufficient to sustain a motion to dismiss. It is one thing to say qualified immunity is *available* to peace officers under the Wyoming Governmental Claims Act. It is quite another to determine whether officers in a particular case are *entitled* to qualified immunity. "Police officers are not immune from liability if they negligently perform an operational duty such as driving a patrol car. A qualified immunity is available only with respect to executive policy functions." *DeWald,* 719 P.2d at 649. It is conceivable that Darrar could prove a set of facts that would show the officers were performing a ministerial or an operational function or that they did not act reasonably under the circumstances. We cannot say based on the limited facts available that it appears beyond a doubt that Darrar can prove no set of facts in support of her claim which would entitle her to relief. Therefore, we must reverse and remand to allow for further development of the facts.

*Wyoming Governmental Claims Act and Qualified Immunity.*

In *Kimbley v. City of Green River,* 663 P.2d 871 (Wyo.1983), we held qualified immunity was still available to peace officers when sued pursuant to the Wyoming Governmental Claims Act. In *DeWald* we limited the holding in *Kimbley* to discretionary acts of peace officers. Once we determined that driving a police car was an operational act, not a discretionary act, we applied negligence principles. *DeWald,* 719 P.2d at 649. The legislature amended the Act[5] after our decisions in *Kimbley* and *DeWald* and had the opportunity to correct our decisions interpreting the Act, if we were in error. It did not. Therefore, we may assume that *Kimbley* and *DeWald* correctly interpreted legislative intent when they held that peace officers are entitled to qualified immunity under the Act. *Harvey v. Stanolind Oil & Gas Co.,* 53 Wyo. 495, 500–01, 84 P.2d 755, 757 (1938).

■ Based on our decisions in *Kimbley* and *DeWald,* the district court properly determined qualified immunity is available to peace officers in spite of the waiver of immunity in the Wyoming Governmental Claims Act. However, peace officers have never been entitled to absolute immunity. *Blake,* 651 P.2d at 1107. The district court's decision to grant the officers' motion to dismiss without considering facts necessary to determine whether the officers were entitled to qualified immunity was, as a practical matter, an improper grant of absolute immunity to the officers.

*The City of Sheridan*

■ In a Wyoming Governmental Claims Act tort case against a peace officer, if the officer was acting within the scope of his or her duties, the governmental entity must provide a defense for the officer and assume and pay any judgment entered

---

4. The district court did not issue a decision letter explaining the basis for its determination that the officers were entitled to qualified immunity and no transcript of the hearing was provided for review.

5. *See* 1986 Wyo.Sess.Laws Ch. 19, § 1 (amended § 1–39–104(b) to provide that the governmental

entity shall assume any judgment rendered against the public employee); 1986 Wyo.Sess. Laws Ch. 74, § 2 (amended term "law enforcement officer" to "peace officer" in Wyo.Stat. §§ 1–39–103 and –112); 1988 Wyo.Sess.Laws Ch. 45, § 1 (amended §§ 1–39–104, –110, –115 and –118).

against the officer. WYO.STAT. § 1–39–104(b), (c) (1988). If the court determines the officer is entitled to qualified immunity, then as a matter of law, the officer is not liable. If the officer is entitled to the affirmative defense of qualified immunity, the conduct of the officer is not tortious, and no vicarious liability exists on the part of the governmental entity. *DeWald*, 719 P.2d at 655 (Thomas, C.J., specially concurring). If the trial court determines that the officer is not entitled to qualified immunity, the officer's conduct is subject to the general principles of tort law. *DeWald*, 719 P.2d at 649; *Keehn v. Town of Torrington*, 834 P.2d 112, 114 (Wyo.1992). However, if the officer was acting within the scope of his or her duties and is not entitled to qualified immunity—because the conduct was malicious or fraudulent—the governmental entity still must defend and indemnify the officer. WYO.STAT. § 1–39–104(b) (1988).

■ The district court's denial of Sheridan's motion to dismiss is affirmed. Sheridan relied on the dismissal of the case against the officers in its argument for dismissal. We have reversed that dismissal; therefore, Sheridan's argument is no longer valid. However, we also direct Sheridan's attention to the plain language of WYO.STAT. § 1–39–112 (1988):

A **governmental entity** is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties.

(Emphasis added). The court need not expressly find liability against the governmental entity under the doctrine of respondeat superior as Sheridan contends, rather, the statute itself makes the entity liable. *Abalos v. Bernalillo County D.A.'s Office*, 105 N.M. 554, 734 P.2d 794, 799 (Ct.App.1987), *cert. quashed*, 106 N.M. 35, 738 P.2d 907 (1987) (citing *Gonzales v. State*, 29 Cal.App.3d 585, 105 Cal.Rptr. 804, 808 (1972)). Without a determination that the officers were not acting within the scope of their duties or that their conduct was not tortious, the governmental entity does not escape liability for the tortious acts of its peace officers. The district court could not make such a determination based on the allegations in the complaint and properly denied Sheridan's motion to dismiss.

## CONCLUSION

Darrar's complaint sufficiently alleges a cause of action for negligence and alleges facts sufficient to bring the reasonableness and the function of the officers' acts into question. The order granting the officers' motion to dismiss was in error. We reverse that order and remand the case for a determination of whether the officers are entitled to the protection afforded by qualified immunity under the circumstances of this case. Because Sheridan's argument on appeal was based on the district court's dismissal of the claims against the officers, we affirm the district court's denial of Sheridan's motion to dismiss.