2007 WY 188

**Jeffrey Todd LAYLAND, Appellant (Plaintiff),**

v.

**David STEVENS, Appellee (Defendant).**

**No. S–07–0046.**

Supreme Court of Wyoming.

Dec. 4, 2007.

Rehearing Denied Jan. 8, 2008.

Representing Appellant: Robert T. Moxley of Robert T. Moxley, P.C., Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Christine Cox, Senior Assistant Attorney General; Thomas W. Rumpke, Senior Assistant Attorney General. Argument by Ms. Cox.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]  Jeffrey Todd Layland was arrested and charged with kidnapping and witness intimidation.  He filed a claim under 42 U.S.C. § 1983 against David Stevens, the deputy who arrested him, alleging various civil rights violations.  Both parties filed motions for summary judgment and, after a hearing, the district court granted Deputy Stevens' motion and dismissed the case.  Mr. Layland appeals claiming error in the district court's order, including its ruling that qualified immunity barred his civil rights claims against Deputy Stevens.  We affirm.

## ISSUE

[¶ 2]  Of the three issues raised by Mr. Layland, the following is determinative:

Was Deputy Stevens entitled to qualified immunity from suit for constitutional violations allegedly arising out of Mr. Layland's arrest?

## FACTS

[¶ 3]  On January 18, 2005, Deputy Stevens of the Laramie County Sheriff's Depart-

ment responded to a call from United Medical Center in Cheyenne, Wyoming indicating that an individual named Jerry Young wanted to speak with law enforcement. When Deputy Stevens arrived at the hospital, he was directed to the emergency room where Mr. Young was being treated. Mr. Young's right eye was severely bruised, cut and bleeding. He had bruises on both of his cheeks. The nurse reported that there were also scratches on Mr. Young's eye itself.

[¶ 4] Mr. Young told Deputy Stevens that he had gone to Mr. Layland's shop at 4506 Woodhouse Road in Cheyenne to retrieve a propane heater that Mr. Layland had borrowed from him.[1] He said that as he stepped into the shop, Mr. Layland locked the door behind him, put his arm around him and began punching him in the face. Mr. Young reported that he tried to leave but Mr. Layland prevented him from doing so. He said at one point when he tried to get to the door Mr. Layland's brother pushed him to the ground. He said that Mr. Layland yelled at him, "This is only the beginning if you do not testify for me." He said Mr. Layland wanted him to lie for him in court in a case filed against him. Mr. Layland said if Mr. Young refused, he or a member of his family would be killed. Once Mr. Young agreed to speak with Mr. Layland's lawyer, Mr. Layland let him leave the building. Mr. Young said he drove straight to the hospital for treatment of his injuries.

[¶ 5] After speaking with Mr. Young at the hospital, Deputy Stevens went back to the sheriff's office where he spoke with his supervisor about what Mr. Young had reported. Deputy Stevens and/or his supervisor also contacted the district attorney and a detective. It was decided that Deputy Stevens would attempt to locate and speak with Mr. Layland.

[¶ 6] Deputy Stevens found Mr. Layland at the address where Mr. Young reported having been assaulted. Accompanied by his dog, Deputy Stevens knocked on the door of the building. Mr. Layland opened the door. Deputy Stevens asked if he could talk with him about what had happened earlier with Mr. Young. Mr. Layland was cooperative and agreed to talk with Deputy Stevens.

[¶ 7] Mr. Layland's dog was in the building, one or both dogs were barking and Deputy Stevens asked Mr. Layland to confine his dog somewhere. Mr. Layland complied by putting his dog in a van parked inside the building. Two other deputies arrived at the scene. Because Mr. Layland seemed cooperative and non-threatening, Deputy Stevens asked one of the deputies to take his dog and put it back in the patrol car. As the dogs were being removed from the immediate area, Deputy Stevens stepped into the building followed by the other deputies and asked Mr. Layland what had happened with Mr. Young earlier. Mr. Layland said Mr. Young came to the shop and tried to assault him and he had punched Mr. Young. He said he did not know why Mr. Young tried to assault him.

[¶ 8] Inside the building, Deputy Stevens observed a dead bolt lock on the door which seemed consistent with Mr. Young's story. He also observed bruises on Mr. Layland's knuckles. Additionally, Deputy Stevens knew prior to speaking with Mr. Layland that he had been arrested previously, a charge against him was pending and Mr. Young was a potential witness in the case.[2] Believing that he had probable cause to arrest Mr. Layland for kidnapping, Deputy Stevens arrested Mr. Layland and transported him to jail. Deputy Stevens later testified that he was concerned at the time of the arrest that Mr. Layland possibly posed a continuing danger to Mr. Young or his family.

---

1. The building in which the incident occurred was variously described in the testimony as a shop, a shed, and a garage. In his appellate brief, Mr. Layland states that it was a large building that he had rented for several years in which he kept several vehicles, tools and other materials.

2. In late 2004, Mr. Layland was arrested and charged with receiving stolen property in violation of Wyo. Stat. Ann. § 6–3–403 (LexisNexis 2007). [R Vol. III 439, 447] He posted a bond and was out of jail awaiting trial on that charge at the time of the altercation with Mr. Young.

[¶ 9] Mr. Layland was charged with kidnapping and witness intimidation.[3] On January 21, 2005, while being held in the Laramie County Detention Center, Mr. Layland filed a complaint against Deputy Stevens in district court in which he alleged claims under 42 U.S.C. § 1983 for false arrest, false imprisonment, malicious prosecution and gross negligence. He filed an amended complaint on February 1, 2005, in which he added a claim for trespass in violation of § 1983.

[¶ 10] Deputy Stevens moved to dismiss Mr. Layland's complaint on the ground that the district court in which the criminal charges were pending was not the proper forum to consider Mr. Layland's civil rights claims because the latter claims undermined the validity of his arrest on the criminal charges. On April 28, 2005, at the close of a hearing, the district court denied the motion to dismiss but granted a stay in the § 1983 action until the criminal case was resolved. In mid-August, the court entered a written order to that effect. On September 26, 2005, the district court entered an order lifting the stay on the ground that the criminal charges giving rise to the civil rights claims were no longer pending.[4]

[¶ 11] Upon lifting of the stay, Deputy Stevens answered the civil rights complaint and asserted affirmative defenses, including qualified immunity. Both parties filed motions for summary judgment. Mr. Layland asserted in his motion for partial summary judgment that he was entitled to judgment as a matter of law on his claim that he was arrested without probable cause. Deputy Stevens asserted in his motion that Mr. Layland's complaint: 1) did not state a cause of action under § 1983; 2) was barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) in which the Court held that a § 1983 action challenging the validity of a criminal matter is barred absent a favorable termination of the criminal proceeding and dismissal based upon a plea agreement was not a favorable termination; and, 3) must be dismissed on the basis of qualified immunity. Following a hearing on the motions, the district entered an order granting Deputy Stevens' motion for summary judgment finding that the claims were barred by qualified immunity and the *Heck* line of cases.

## STANDARD OF REVIEW

[¶ 12] The issue we find determinative is whether qualified immunity bars Mr. Layland's claims against Deputy Stevens. The presence or absence of qualified immunity presents a question of law which is reviewed on appeal *de novo*. *Lucero v. Mathews*, 901 P.2d 1115, 1118 (Wyo.1995). The issue is a purely legal one: whether the law the deputy allegedly violated was clearly established at the time of the challenged action or actions. *Id.*

## DISCUSSION

[¶ 13] Qualified immunity shields public officials from suit on § 1983 civil rights claims when they are performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When a plaintiff names a public official as a defendant in a § 1983 action and the defendant pleads the defense of qualified immunity, the plaintiff must demonstrate that the official's actions violated constitutional or statutory rights and that the allegedly violated rights were clearly established at the time of the conduct at issue. *Id.* For a plaintiff to demonstrate that the right was clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is

---

**3.** The latter charge was based on Mr. Young's report that Mr. Layland attempted to intimidate him into testifying for him in the case pending on the receipt of stolen property charge.

**4.** On August 16, 2005, the district court entered an order dismissing the charges of kidnapping and witness intimidation filed against Mr. Layland. [R Vol. III 436] Dismissal of those charges

was part of a plea agreement entered into between the State and Mr. Layland in which the State agreed to dismiss the kidnapping and witness intimidation charges and amend the receipt of stolen property charge to a misdemeanor in exchange for Mr. Layland's agreement to plead guilty to the misdemeanor. [R Vol. III 445]

doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

[¶ 14] The right at issue here is the right guaranteed by the Fourth Amendment to be free from unreasonable seizure. To avoid the qualified immunity defense, Mr. Layland was required to show that Deputy Stevens' arrest of him without a warrant violated his Fourth Amendment right and that the contours of that right were sufficiently clear that a reasonable official would have understood his actions violated the right. Mr. Layland argued that a reasonable deputy would have understood he could not enter private property to arrest someone without a warrant absent consent or exigent circumstances, neither of which existed. In response, Deputy Stevens argued, first, that he did not unreasonably seize Mr. Layland and, second, that he had probable cause to arrest Mr. Layland; therefore, he asserted, Mr. Layland's Fourth Amendment rights were not violated.

[¶ 15] In concluding that Mr. Layland's Fourth Amendment rights were not violated, the district court relied on *U.S. v. Little*, 18 F.3d 1499, 1503 (10th Cir.1994) in which the court considered the factors for determining whether a person has been illegally seized. Among those factors are the threatening presence of several officers; the brandishing of a weapon, physical touching, aggressive language, or retention of the person's personal belongings by an officer; a request to accompany the officer to the police station; the absence of other members of the public; and whether the interaction occurs in a nonpublic, small or enclosed space. *Id.* The district court applied these factors and concluded that Mr. Layland had failed to show that he had a clearly established right not to be arrested under the circumstances. On that basis, the district court held that Deputy Stevens was entitled to qualified immunity. We agree with the district court's conclusion that Deputy Stevens was entitled to qualified immunity; however, we reach that result by a different analysis.

[¶ 16] Controlling precedent makes clear that qualified immunity shields Deputy Stevens from suit for damages if a reasonable officer could have believed Mr. Layland's arrest to be lawful, in light of clearly established law and the information Deputy Stevens possessed. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), quoting *Anderson*, 483 U.S. at 641, 107 S.Ct. 3034. Even if Deputy Stevens reasonably, but mistakenly, concluded that probable cause was present, he is entitled to immunity. *Id.* The question is whether he acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed after the fact. *Hunter*, 502 U.S. at 228, 112 S.Ct. 534. Even if Deputy Stevens was mistaken in concluding that probable cause existed, he nevertheless is entitled to qualified immunity if his decision was reasonable.

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

*Id.* at 229, 112 S.Ct. 534 (citations omitted).

> Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances ... and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search [or arrest], *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions.

*Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Thus, the standard is one of reasonableness at the moment. *Id.* "Probable cause existed if 'at the moment the arrest was made ... the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' " a crime had been committed. *Hunter*, 502 U.S. at 228, 112 S.Ct. 534.

[¶ 17] Applying these standards, the Court in *Hunter* concluded secret service agents were immune from suit on claims that they violated Mr. Bryant's Fourth Amendment rights when they arrested him without a warrant after questioning him at his apartment for making threats against President Reagan. The Court concluded:

> When Agents Hunter and Jordan arrested Bryant, they possessed trustworthy information that Bryant had written a letter containing references to an assassination scheme directed against the President, that Bryant was cognizant of the President's whereabouts, that Bryant made an oral statement that "he should have been assassinated in Bonn," and that Bryant refused to answer questions about whether he intended to harm the President.
>
> These undisputed facts establish that the Secret Service agents are entitled to qualified immunity. Even if we assumed, *arguendo*, that they ... erred in concluding that probable cause existed to arrest Bryant, the agents nevertheless would be entitled to qualified immunity because their decision was reasonable, if mistaken.

*Id.* at 228–29, 112 S.Ct. 534 (citations omitted).

[¶ 18] Similarly, in *Romero v. Fay*, 45 F.3d 1472 (10th Cir.1995), the court held that a police officer was entitled to qualified immunity from claims arising out of a warrantless arrest. After interviewing two witnesses who implicated Romero in Douglas' murder, Officer Fay arrested Romero without a warrant at his place of work. Romero later filed a civil rights claim against Officer Fay alleging that his constitutional rights were violated because, among other claims, he was arrested without probable cause after an unreasonable investigation. *Id.* at 1474.

[¶ 19] The court of appeals held that upon submission of Officer Fay's sworn statement that he concluded he had probable cause to arrest Romero based on the two witness interviews, Romero had the burden to show that the witness statements were not sufficiently trustworthy to lead a prudent police officer to conclude he had probable cause to arrest without a warrant. The Court concluded Romero failed to show the information known to Officer Fay was insufficient to cause a reasonable officer to believe that probable cause existed for a warrantless arrest. *Id.* at 1476.

[¶ 20] More recently, in *Robertson v. Las Animas County Sheriff's Department*, 500 F.3d 1185 (10th Cir.2007), the Court again held that a deputy was entitled to qualified immunity from suit on claims that he violated an arrestee's Fourth Amendment rights. Based upon the statements of two witnesses, the deputy arrested Robertson without a warrant for violating a temporary protection order. One of the witnesses reported that Robertson was on her property in violation of the protection order. The witness' daughter stated that she was playing in the living room and saw Robertson looking through the window. Her mother stated that she then saw Robertson running from their property toward his own residence. The deputy arrested Robertson without a warrant the same day. The Court concluded the witness statements were sufficient to cause a reasonable deputy to believe probable cause to arrest existed. *Id.* at 1191–92.

[¶ 21] In the present case, prior to Mr. Layland's arrest, Deputy Stevens had spoken with Mr. Young at the hospital. He was bruised and his right eye was cut and bleeding. He said he had gone to Mr. Layland's shop to retrieve a heater and Mr. Layland locked the door behind him and proceeded to punch him. He further reported that Mr. Layland prevented him from leaving and threatened him and his family if he did not testify for him in the receipt of stolen property trial. He indicated that Mr. Layland allowed him to leave only after he said he would to talk to Mr. Layland's lawyer.

[¶ 22] Before locating Mr. Layland, Deputy Stevens spoke with his supervisor, the district attorney and a detective. The record indicates no disagreement that Mr. Layland should be located and, upon corroboration of Mr. Young's statement, arrested. When Deputy Stevens located Mr. Layland at the building where Mr. Young indicated the incident occurred, Mr. Layland opened the door and indicated he was willing to talk about what happened. He did not refuse entry to Deputy Stevens and cooperated fully in an-

swering his questions. He admitted that he had punched Mr. Young. The deadbolt lock on the inside of the door and bruises on Mr. Layland's knuckles corroborated Mr. Young's story. Additionally, Deputy Stevens knew, consistent with Mr. Young's report, that Mr. Layland was facing trial on another criminal charge and Mr. Young was a potential witness. He also believed Mr. Layland possibly posed a continuing danger to Mr. Young.

[¶ 23] From these circumstances, we conclude a reasonable officer could have believed Mr. Layland's arrest was lawful, in light of clearly established law and the information Deputy Stevens possessed. Even if Deputy Stevens' conclusion that he had probable cause to arrest was mistaken, the circumstances provided substantial grounds for a deputy to reasonably believe that he had legitimate justification under the law for arresting Mr. Layland. That he may have been mistaken in that belief does not deprive him of his entitlement to qualified immunity.

[¶ 24] Mr. Layland argues that Deputy Stevens is not entitled to qualified immunity because it was clearly established and a reasonable officer would have known that entry onto Mr. Layland's rental property to arrest him without a warrant was not permitted without probable cause *and* consent or exigent circumstances. Mr. Layland asserts that he did not consent to the entry and no exigent circumstances existed justifying his arrest without a warrant. In advancing this argument, Mr. Layland relies heavily on *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and *Mickelson v. State*, 906 P.2d 1020 (Wyo.1995).

[¶ 25] In *Payton,* the Court held that absent exigent circumstances or the owner's consent, a warrantless arrest inside a private dwelling violates the Fourth Amendment. The United States Supreme Court has not extended the rule enunciated in *Payton* to premises other than a private home. To overcome this difficulty, Mr. Layland argues that this Court in *Mickelson* extended the *Payton* rule to include not only private homes, but private places of business; thus, he argues, the law is clearly established in Wyoming that warrantless arrests inside pri-

vate business premises violate the Fourth Amendment absent consent or exigent circumstances.

[¶ 26] There are at least two difficulties with Mr. Layland's reliance on *Mickelson.* First, even assuming that *Mickelson* extended the *Payton* rule to include private businesses, Mr. Layland has gone to great lengths in his reply brief to persuade this Court that the building in which this incident occurred was not a place of business. There is no contention it was a home. Therefore, neither *Payton* nor *Mickelson* are controlling.

[¶ 27] Second, and more importantly, the evidence presented does not establish a lack of consent as it clearly did in *Mickelson.* There, officers observed men inside a bar after hours. The officers approached the door and Mickelson refused them entry. The officers contacted the bar owner by telephone and she informed them that her son and some friends were probably closing up the bar. She did not give the officers permission to enter. Thereafter, a female officer persuaded Mickelson to let her enter the bar alone. When she did so, another officer forced his way in behind her, along with several other officers, and arrested Mickelson for interference with a peace officer.

[¶ 28] Under those circumstances, we held the warrantless arrest was unlawful. Specifically addressing the consent exception to the warrant requirement, we concluded there was no consent where the owner had not given consent, the occupant and owner's son had expressly refused consent, and the only consent given was limited to the female officer, not to the male officers who forced their way in behind her. Because Mickelson's consent was conditional—he agreed only that the female officer could enter—and he did not consent to the other officers' entry, we concluded his consent did not justify the officers' entry and warrantless arrest.

[¶ 29] In contrast to the circumstances in *Mickelson,* Mr. Layland did not refuse police entry and no one convinced him to allow entry, conditional or otherwise. Instead, the evidence showed that Deputy Stevens knocked on the door, Mr. Layland opened it,

and Deputy Stevens asked him a few questions which Mr. Layland cooperatively answered as the deputy stepped into the building. This evidence simply is not sufficient to establish that Deputy Stevens violated clearly established law by entering the building without consent and arresting Mr. Layland without a warrant. We conclude a reasonable officer could have concluded the entry into the building and Mr. Layland's subsequent arrest were lawful under clearly established law and in light of the knowledge Deputy Stevens possessed.

[¶ 30] Mr. Layland's further assertion that, at the very least, the evidence establishes a genuine issue of material fact as to whether he consented to the entry is likewise unavailing. As the Court reiterated in *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151 (some citations omitted),

> Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." As a result, we have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

To deny summary judgment any time a material issue of fact remains would "undermine the goal of qualified immunity to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.* at 202, 121 S.Ct. 2151. Therefore, "if the law did not put the officer on notice that his conduct would clearly be unlawful, summary judgment based on qualified immunity is appropriate." *Id.* Un-

der the facts presented, we conclude as a matter of law that a reasonable officer could have concluded he had consent to enter the building to question Mr. Layland and probable cause to arrest him without a warrant.

[¶ 31] The district court's order granting summary judgment is affirmed on the basis of qualified immunity.[5]

---

5. Our resolution of the qualified immunity issue disposes of Mr. Layland's claims in their entirety. His argument, presented for the first time on appeal, that qualified immunity does not protect Deputy Stevens from suit for state tort claims is not well-taken. In his original complaint and first amended complaint, Mr. Layland clearly alleged claims under § 1983 and did not allege separate state law claims. Throughout the district court proceedings, this matter was framed and treated accordingly.