2012 WY 129

**UINTA COUNTY, Wyoming; Uinta County Sheriff Louis Napoli; and Board of County Commissioners of the County of Uinta, Appellants,**

v.

**Judee PENNINGTON, Appellee.**

**No. S–12–0020.**

Supreme Court of Wyoming.

Oct. 1, 2012.

---

Representing Appellant Uinta County Sheriff Louis Napoli: Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; and Misha E. Westby, Senior Assistant Attorney General. Argument by Ms. Westby.

Representing Appellants Uinta County, Wyoming, and Board of County Commissioners of the County of Uinta: Richard Rideout of the Law Offices of Richard Rideout, PC, Cheyenne, Wyoming.

Representing Appellee: Mel C. Orchard, III, of The Spence Law Firm, LLC, Jackson, Wyoming; and V. Anthony Vehar of Vehar Law Offices, P.C., Evanston, Wyoming. Argument by Mr. Vehar.

Before GOLDEN, HILL, VOIGT, and BURKE, JJ., and PARK, D.J.

PARK, District Judge.

[¶ 1]   Judee Pennington was sexually assaulted by Todd Hoover, a Uinta County detention officer, while she was an inmate at the Uinta County Detention Center.  Ms. Pennington filed claims under the Wyoming Governmental Claims Act, Wyo. Stat. Ann. § 1-39-101, *et seq.*, against Hoover, Uinta County Sheriff Louis Napoli, and the Uinta County Board of Commissioners for damages stemming from this assault.  Sheriff Napoli, Uinta County, and the County Commissioners are the Appellants in these proceedings.  Ms. Pennington is the Appellee.  The trial court denied the Sheriff's and the County's motions for summary judgment on claims against the Sheriff for negligent supervision and training, and on the Sheriff's motion for qualified immunity;  and also denied the County's and the Board of Commissioners' motions as to statutorily imposed liability.  The Sheriff and the County appeal from the denial of their respective motions.  Ms. Pennington does not appeal from the trial court's ruling granting summary judgment in favor of the Appellants on her other claims.

[¶ 2]   We reverse the trial court's decision.

## ISSUE

[¶ 3]   Appellants present several issues.  The Court finds one question to be dispositive and does not consider the other matters presented.  The dispositive issue presented on appeal is:

> Does the record support the trial court's ruling that Sheriff Napoli was not entitled to assert the defense of qualified immunity?

## FACTS

[¶ 4]   Ms. Pennington was an inmate of the Uinta County Detention Center because she had been terminated from the drug court program and was waiting for a placement in a treatment program.  While she was an inmate, she was given drugs by Todd Hoover, and she was sexually assaulted by him.

[¶ 5]   Todd Hoover (hereinafter "Hoover") was a detention officer who worked for the Uinta County Sheriff from 2006 until 2007.  Prior to working in Uinta County, Hoover

had been a detention officer in Utah for nearly five years. He had no training in Wyoming, but he had been trained in Utah. His training included what were acceptable and unacceptable interactions with female inmates, as well as what would constitute unlawful sexual contact with female inmates. While he was in Utah, Hoover had back surgery and became addicted to pain pills. Because of his addiction, he would steal pills that were prescribed for inmates. Hoover's addiction and related drug thefts were not known to the Uinta County authorities and came to light only because he overdosed while on duty. As a result, the Sheriff conducted an internal investigation, and Hoover confessed to taking inmate drugs. Sheriff Louis Napoli and Hoover both agreed with recommendations that came out of the investigation. These recommendations included two weeks off without pay, extension of Hoover's probationary period for an additional year, counseling and treatment as recommended by Dr. Eric Nielsen, disclosure and access to all of Hoover's medical records relating to the drug theft, and random urinalysis.

[¶ 6] Hoover met with Dr. Nielsen, who concluded that Hoover could supervise work crews outside of the jail; and that if counseling treatments were in place for pain management, substance abuse, and personal relationships with his wife, it would be appropriate for him to return to work inside the jail.

[¶ 7] Hoover also met with Patricia Roberts, a licensed clinical social worker, for a substance abuse evaluation. Ms. Roberts recommended that Hoover should take only specifically prescribed pain medication; that he should consult with a pain clinic and follow its treatment recommendations; that he should complete a residential treatment program for controlled substances; that he should continue treatment with his therapist; and that he should be supervised when handling prescription medications at the jail.

[¶ 8] The parties disagree as to the extent that Hoover was following the recommendations of Dr. Nielsen and Ms. Roberts. This disagreement is not important because while he was in treatment, he committed the sexual assault, making further progress on his drug problem irrelevant. After the assault, Hoover's employment was terminated. Criminal charges were filed against him. He entered a guilty plea and served a prison sentence.

[¶ 9] Ms. Pennington initially filed an action in federal court. Subsequently, all the federal claims were dismissed, and the federal judge declined to retain jurisdiction over the state claims. Ms. Pennington then filed in state court. She asserted claims against Sheriff Napoli under theories of *respondeat superior*, vicarious liability, negligent supervision and training, and claims for intentional and negligent infliction of emotional distress. The trial court had some question as to the nature of her claims against the County, but concluded that Pennington's claims were for vicarious liability for the conduct of Sheriff Napoli.

[¶ 10] The Sheriff and the County filed motions for summary judgment. The trial court denied the motion on the claim against the Sheriff for negligent supervision and training and found that the Sheriff was not entitled to assert qualified immunity. The trial court also denied summary judgment as to the County's and Board's assertion that they were not statutorily liable for the actions of Sheriff Napoli. The trial court granted summary judgment as to all other claims. The Sheriff and the County filed an interlocutory appeal, asserting that the trial court should have granted the motions for summary judgment as to the claims for negligent supervision and training and qualified immunity. In general terms, the question before the Court is whether the trial court's denial of summary judgment is supported by the record.

## STANDARD OF REVIEW

[¶ 11] The standard of review for summary judgments is well-established. We review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Gayhart v. Goody*, 2004 WY 112, ¶ 11, 98 P.3d 164, 168 (Wyo.2004). Summary judgment is proper only when there

are no genuine issues of material fact, and the prevailing party is entitled to judgment as a matter of law. *Id.* Summary judgments are not favored in negligence actions. *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 12, 126 P.3d 886, 889 (Wyo.2006). However, summary judgments have been upheld in negligence cases where the record did not establish the existence of a genuine issue of material fact. *Id.*

### DISCUSSION

[¶ 12] Sheriff Napoli appeals from the denial of his motion for summary judgment in which he asserted the defense of qualified immunity. We must first determine whether we have jurisdiction over this appeal. The denial of a motion for summary judgment is generally not an appealable final order. *Gilstrap v. June Eisele Warren Trust,* 2005 WY 21, ¶ 7, 106 P.3d 858, 861 (Wyo.2005). An exception to this rule exists when a district court refuses to dismiss a case on the basis of qualified immunity. *State ex rel. Dep't of Corrections v. Watts,* 2008 WY 19, ¶ 9, 177 P.3d 793, 795 (Wyo. 2008). An order denying a summary judgment on a claim of qualified immunity is appealable, and a grant of discretionary review is not necessary. *Id.* at ¶ 10, 177 P.3d at 796. The Court has jurisdiction to review the denial of the motions filed by the Sheriff and the County.

[¶ 13] A peace officer is entitled to qualified immunity if, while acting within the scope of his duties, he performed his discretionary duties reasonably and in good faith. *Darrar v. Bourke,* 910 P.2d 572, 575 (Wyo. 1996). This immunity defense was recognized at common law and was a policy "developed to give a measure of protection to a public official from the harassment and risk of being mulcted in damages for mistakes he may make in the performance of his public duties." *Blake v. Rupe,* 651 P.2d 1096, 1108 (Wyo.1982). This Court, in *Blake,* adopted the reasoning of the United States Supreme Court in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974):

* * * [T]he common law soon recognized the necessity of permitting officials to perform their official functions free from the threat of suits for personal liability. This official immunity apparently rested, in its genesis, on two mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good.

*Id.* at 239–40, 94 S.Ct. at 1688. We held in *Kimbley v. City of Green River,* 663 P.2d 871, 883 (Wyo.1983), that defendants retained any common-law defenses even if immunity was waived under the Governmental Claims Act. A defendant is entitled to assert the defense of qualified immunity even though a plaintiff's claims are based on the Governmental Claims Act. *Id.*

[¶ 14] In order to establish a claim of qualified immunity, the claimant must prove: 1) the officer was acting within the scope of his or her duties; 2) the officer was acting in good faith; 3) the officer's acts were reasonable under the circumstances; and 4) the officer's acts were discretionary duties and not merely operational or ministerial duties. *Darrar,* 910 P.2d at 575–76. It is appropriate to review a denial of a claim for qualified immunity if the facts have been sufficiently developed through a motion for summary judgment. *Id.* at 577. The specific issue before this Court is whether Sheriff Napoli proved that there were no material questions of fact as to each of the elements of qualified immunity. If he carried this burden, then the trial court erred in denying summary judgment. If the record reflects that there are questions of fact, the trial court's ruling is correct.

[¶ 15] The trial court denied summary judgment as to the claim of qualified immunity and ruled that:

This Court concludes that there are genuine issues of material fact that prevent the grant of summary judgment as to the reasonableness of Sheriff Napoli's actions and inactions. Dr. John Peters, an expert in law enforcement agency and detention policy and procedures, presented by Ms.

Pennington, offers his opinion that Sheriff Napoli's conduct was unreasonable and that the Sheriff failed his duties by allowing Mr. Hoover to remain in his position despite his drug abuse history and UCSO policy infractions. He further opines that Mr. Hoover should never have been in a position of supervising inmates at least until he had successfully completed an inpatient treatment program. This Court agrees with Ms. Pennington that the facts presented here do not permit the grant of summary judgment. A reasonable jury could question Sheriff Napoli's decision to allow Mr. Hoover to remain employed as a detention officer and to return to an inmate-supervisory position. A reasonable jury also could question the Sheriff's actions or inactions in ensuring that Mr. Hoover was completing recommended treatment. As a result, summary judgment must be **DENIED.**

[¶ 16] The trial court correctly set out the factors that must be considered for a successful defense of qualified immunity; however, the trial court's analysis is misdirected. The trial court focused on whether there were differences of opinion as to the reasonableness of the Sheriff's actions that had to be determined by a jury. This is a negligence analysis. The issue before the trial court was not whether the Sheriff was negligent, but rather whether he was entitled to qualified immunity. Whether a public official is entitled to qualified immunity is a question of law which the court must resolve. *Layland v. Stevens*, 2007 WY 188, ¶ 12, 171 P.3d 1070, 1073 (Wyo.2007). Whereas differences of opinion might create disputed questions of fact in negligence situations, differences of opinion as to the propriety of an officer's action have a different impact in determining whether a public official is entitled to qualified immunity. As will be discussed more fully below, these differences of opinion might tend to show that Sheriff Napoli has qualified immunity. Since the trial court did not apply the proper rule of law, it . is necessary for this Court to review the record to see if the Sheriff is entitled to qualified immunity.

[¶ 17] Both parties agree that Sheriff Napoli was acting in the scope of his duties. The next question is whether Sheriff Napoli was acting in good faith. We have previously defined "good faith" as "being honest, lawful intent, and the condition of acting without knowledge of fraud and without interest to assist in fraudulent or otherwise unlawful scheme," and that "[g]ood faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even though the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." *Darrar*, 910 P.2d at 576. Other courts have held that an officer asserting this affirmative defense must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *Telthorster v. Tennell*, 92 S.W.3d 457, 460 (Tex. 2002).

[¶ 18] Pennington argues the Sheriff was not acting in good faith because he allowed "Detention Officer Hoover to remain in his position despite his drug abuse history and previous policy infractions." Pennington goes on to assert that "Sheriff Napoli's actions and inactions caused the environment that allowed the sexual assaults." She also claims the Sheriff should have "fired Hoover and never allowed him access to inmates such as [Pennington]."

[¶ 19] Previously when we determined that an official was acting in good faith, we did not review the public official's testimony in detail. *Rice v. Collins Communication, Inc.*, 2010 WY 109, ¶ 24, 236 P.3d 1009, 1018 (Wyo.2010). As in *Rice*, we find it unnecessary to include Sheriff Napoli's entire testimony, but conclude from reviewing the record that Sheriff Napoli was acting in good faith. Sheriff Napoli testified that Dr. Nielsen's report "indicates it appears likely that [Hoover] can still manage inmates," but "that [Hoover] shouldn't be around medications." Sheriff Napoli, when asked "Did you personally have any indication prior to Judee Pennington coming forward that Todd Hoover would engage in sexual misconduct with an

inmate," answered "Absolutely not." Pennington provided nothing that indicates a lack of good faith. All evidence suggests that the Sheriff was honest, he had lawful intent, and he was not taking "unconscientious advantage" of Ms. Pennington. We find that Sheriff Napoli acted in good faith.

[¶ 20] The next requirement is that Sheriff Napoli acted reasonably under the circumstances. The term "reasonable" has also been defined by this Court "as having the faculty of reason; rational; governed by reason; being under the influence of reason; thinking, speaking, or acting rationally, or according to the dictates of reason; agreeable to reason; just; rational." *Darrar*, 910 P.2d at 576.

[¶ 21] As previously noted, the trial court held that there were differences of opinion as to whether Sheriff Napoli should have terminated Hoover. In order to show that he was entitled to qualified immunity, the Sheriff was not obligated to prove that all reasonably prudent law enforcement officers would have acted as he did. He was required to prove only that a reasonably prudent officer, under the same circumstances, might have reached the same decision. *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010). If officers of reasonable competence could disagree on the issue, the officer will be said to have acted in good faith as a matter of law. *Cherqui v. Westheimer Street Festival Corp.*, 116 S.W.3d 337, 351 (Tex.App. 2003).

[¶ 22] Pennington contends that Sheriff Napoli was not acting reasonably because he "should have been well aware of the dangers Hoover posed to inmates, including [Pennington]." This presents the question of whether Sheriff Napoli knew or should have known that when he elected to retain Hoover in his position, he placed female inmates at risk of possible sexual assault. If Hoover's attack on Ms. Pennington was not reasonably foreseeable, the Sheriff acted reasonably. Pennington's argument is based on statements that people who are addicted to drugs sometimes exercise poor judgment and have low inhibitions to establish the necessary foreseeability. The fact that a person may show "poor judgment" does not lead to the conclu-

sion that the person will commit a sexual assault; not all people with poor judgment commit sexual assaults. The nexus between a drug addict with poor judgment and the foreseeability of a sexual assault by this person is simply not present. Pennington also attempts to show foreseeability by pointing to statements in the record indicating that sex between detention officers and inmates is a recognized problem. This refers to a previous incident in Uinta County which occurred about ten years prior to this case when detention officers gave prescription medications to female inmates in exchange for sex. However, the assaulting detention officers in the previous incident were not shown to have been addicted to drugs; these facts do not lead to the conclusion that a detention officer with drug-related problems would commit sexual assaults.

[¶ 23] Finally, Pennington asserts that Sheriff Napoli should have terminated Hoover either at the disclosure of his drug problem or during the course of his continued probation. She argues that it was not safe for Hoover to be around inmates and attempts to support her position with recommendations from Hoover's therapists. It is correct that Mr. Hoover's counselors suggested that Mr. Hoover should be supervised when he was with inmates, and they recommended that the Sheriff ensure that Mr. Hoover was a "safe" employee; however, the two counselors were not worried about a sexual assault. A reading of the record shows that Dr. Nielsen's recommendations were solely to prevent Mr. Hoover from taking medications from inmates. Ms. Roberts also suggested that Mr. Hoover be supervised, but she also was concerned about his access to medications. Both counselors were concerned only with keeping Mr. Hoover away from drugs. There is nothing to suggest that either Dr. Nielsen or Ms. Roberts considered or should have considered the possibility of an attack on an inmate. Likewise, nothing in the record shows that Sheriff Napoli should have been alerted to the possibility of physical danger to inmates from Hoover. On the contrary, the Appellants provided evidence that Sheriff Napoli had no reason to suspect that Mr. Hoover would

assault Ms. Pennington. Further, even the Appellee's own expert, Dr. John Peters, Jr., could not establish a link between drug use and sexual assaults.

[¶ 24] Sheriff Napoli hired Hoover as an experienced detention officer with several years of service. While Hoover concedes that he had a drug problem at the time he was hired, the Sheriff did not know and could not have known of this addiction. During his employment, until the overdose episode, there is nothing in the record to indicate that Hoover had any job-related problems, especially any indication that he might commit a sexual assault. After the overdose brought Hoover's drug dependency to the surface, the disciplinary plan was appropriate given the nature of the problem, Hoover's experience, and lack of other employment problems. The ultimate test of the reasonableness of Sheriff Napoli's actions turns on whether he should have known that in retaining Hoover under the terms of the disciplinary plan, he was placing inmates in jeopardy. There are no disputed facts concerning the foreseeability of Mr. Hoover's actions; instead, the record establishes that Mr. Hoover's assault was not foreseeable. Under these facts, retention of Hoover under the terms of the disciplinary plan was reasonable. The third factor of the test is satisfied.

[¶ 25] The last factor to be considered is whether the public official was acting in a discretionary or a ministerial capacity. We have defined ministerial acts as: "A public official's duty is ministerial when … it is absolute, certain, and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion." *Oyler v. State*, 618 P.2d 1042, 1048–49 (Wyo.1980). We have adopted the rule that "discretionary acts are those which are of a judgmental, planning, or policy nature." *Board of Cty. Comm'rs of Teton Cty. v. Bassett*, 8 P.3d 1079, 1087 (Wyo.2000). The specific question presented here is whether Sheriff Napoli was acting in a discretionary capacity when he elected to retain Hoover and not terminate his employment. Several courts have held

that decisions involving the hiring, training, and supervision of employees involve the policy judgments protected by the discretionary requirement. *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir.2009); *Sydnes v. United States*, 523 F.3d 1179, 1186 (10th Cir.2008); *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir.2000); *Nurse v. United States*, 226 F.3d 996, 1001–02 (9th Cir.2000); *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1216–17 (D.C.Cir. 1997); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995); *Bolduc v. United States*, 402 F.3d 50, 61 (1st Cir.2005); *Attallah v. United States*, 955 F.2d 776, 784–85 (1st Cir. 1992). We agree with these courts and hold that when Sheriff Napoli decided to retain Hoover under the disciplinary plan, he was acting in a discretionary manner.

[¶ 26] There are four requirements that must be established by the record when a public official asserts qualified immunity. The first factor is not an issue. The factors in dispute are whether Sheriff Napoli acted in good faith, whether he acted reasonably when he opted not to terminate Hoover's employment but to retain him under the disciplinary plan, and whether he was acting in a discretionary manner. The good faith and reasonableness depend on whether Sheriff Napoli should have anticipated that Hoover was likely to assault an inmate. The record contains nothing that should have alerted the Sheriff to this risk. The concern about Hoover was his drug dependency and the potential that he would take drugs belonging to inmates, not the possibility that he would sexually assault a female inmate. Finally, Sheriff Napoli was supervising and training an employee, which is a discretionary act. The trial court erred when it denied summary judgment as to Sheriff Napoli's qualified immunity.

[¶ 27] The only remaining question is the status of Uinta County and the Board of County Commissioners. The order entered by the trial court denied the County's and the Board's motions for summary judgment "as to the statutorily imposed liability for the Sheriff's actions and inactions mandated by the Wyoming Governmental Claims Act."

Based on our holding that Sheriff Napoli is entitled to qualified immunity, the ruling against the County and the Board must also be reversed. *Darrar*, 910 P.2d at 578 ("If the officer is entitled to the affirmative defense of qualified immunity, the conduct of the officer is not tortious, and no vicarious liability exists on the part of the governmental entity.").

[¶ 28] We reverse the decision of the trial court and remand for entry of an order consistent with this opinion.